Christian, J.,
delivered the opinion of the court.
*236 This is a writ of error to a judgment of the circuit court of Augusta county.
The action was assumpsit brought by the appellee (Armentrout) against the personal representative of Isaac Garber, to recover the sum of $1,000,' which it is alleged was paid by Armentrout to Garber in his lifetime under a mistake, and for which Armentrout received no consideration.
The facts proved may be briefly stated as follows:
On the 10th of June, in the year 1859, a deed was executed by Garber and wife to Armentrout, as follows:
This deed, made this 10th day of June, in the year 1859, between Isaac Garber and Rebecca J., his wife, of the county of Augusta and state of Virginia, of the one part, and Albert P. Armentrout, of the same county and state aforesaid, of the other part.
Witnesseth: That, in consideration of the sum of one thousand dollars, to them in hand paid by the' said Albert P. Armentrout, the receipt of which is hereby acknowledged, the said Isaac Garber and Rebecca Jane, his wife, do grant and convey' unto the said Albert P. Armentrout all their interest in and claim to any property, real or personal, of which Chas. Armentrout, the father of said Rebecca J. Garber, may die possessor. As witness their signatures and seals this day and year above written.
Isaac Garbee, [Seal.]
Rebecca Jane Garber, [Seal.]
This deed was acknowledged before a notary public by Garber and wife—the wife’s acknowledgment and privy examination being taken and made in the mode prescribed by law.
Charles Armentrout, the father of Mrs. Garber and of the grantee, Albert P. Armentrout, was living at the date of this deed, and did not depart this life until March, *237 1863, when he died intestate. The sum of $1,000 • paid by Armentrout to Garber upon the delivery uf the deed; and by him invested in a tract of land, which his death, in the year 1872, was devised, with all his estate, real and personal, to his wife, to be held by her until his youngest child arrived at age, when his estate was to be equally divided between his wife and children.
After the death of Charles Armentrout, the interest of Garber and wife in his personal estate was paid to Albert P. Armentrout, amounting to $518.32, Confederate money. He was also put in possession of that portion of the real estate of Charles Armentrout to which Rebecca Garber was entitled as one of the heirs, and which it was supposed had been conveyed, by the deed of June 10th, 1859, above referred to, to Albert P. Armentrout. He was in possession of this real estate, and had received the personal estate to which Garber and wife were entitled during the lifetime of Isaac Garber.
After his death—to wit: in the year 1876—his widow, Rebecca Jane, who was a daughter of Charles Armentrout, together with his other heirs, filed a bill in the circuit court of Augusta county, for partition of the real estate of said Charles Armentrout. In that bill Mrs. Garber alleged that the deed executed by her husband and herself to Albert P. Armentrout, by which they conveyed to him their interest in the estate of her father, Charles Armentrout (who was then living), was, so far as she is concerned, a mere nullity; that at the time of the execution of that instrument, she was under the disabilities of coverture, and that it cannot operate against her as an estoppel; and that said paper writing passed no title, so far as she is concerned; and that she is entitled to her share of the real estate of her father of which he died seized and possessed and intestate.
It is not necessary to notice, in this opinion, the proceedings in this chancery cause for partition of the real *238 esta<;e Charles Armentrout, except to remark that upon the answer of Albert P. Armen trout (the appellee here), and of witnesses, and a full hearing of the whole case the circuit court of Augusta held (and we think rightly held) “that the deed executed on the 10th day of June> 1859, by Isaac Garber and the plaintiff, Rebecca Jane. Garber, then the wife of the said Isaac Garber, was wholly inoperative as a bar, either by grant or by estoppel, to the title of said Rebecca Jane Garber, derived by descent from her father, Charles Armentrout, deceased, (who died after the date of said deed), in and to an undivided share and interest of one-sixth of said land, as heir at law to her father ; and by decree of said court one-sixth of said land was accordingly assigned to Mrs. Garber, which was the same interest which Albert P. Armentrout claimed under the deed executed and delivered to him by Isaac Garber and wife. This decree was entered on the 28th November, 1877.
In May, 1878, the action of assumpsit, which is the subject of the writ of error before us, was brought by Albert P. Armentrout against the administrator of Isaac Garber, the object of which, as before stated, was to recover back the $1,000 which he had paid for the interest of Garber and wife in the estate of Charles Armentrout. A jury was waived, and the matters both of law and fact were submitted to the court. The facts above detailed were proved, and the proceedings of the chancery cause and the decree in that cause were offered as evidence; and the circuit court, after giving credit to the defendant for the scaled value of the Confederate money received by the plaintiff, and also after charging the plaintiff with certain rents and profits, entered a judgment for the balance—to wit: the sum of $976.76—with interest thereon from the 3d day of June, 1872, till paid, and costs.
To this judgment a writ of error was awarded by one of the judges of this court.
*239 The court is of opinion that there is no error in . r. judgment ot the circuit court.
The action of assumpsit is essentially an equitable
It always lies to recover money which the defendant ex equo et bono ought not to retain in his hands. It is a general rule that where one man has in his hands money which, according to the rules of equity and good conscience, belongs to and ought to be paid to another, an action will lie for such money as money received by defendant to plaintiff’s use.
It also lies for money paid under a mistake, or upon a consideration which happens to fail. It was said by Lord Mansfield, in Moses v. McFerlan, 2 Burrow’s R. 1012, that the action of assumpsit is a kind of equitable action, which he thought very beneficial. It lies for money which ex equo et bono the defendant ought to refund. See 2 Rob. Pract. (new), 449, 450, and cases there cited; also 23 Eng. Com. Laws R. 432.
Applying these acknowledged principles of law to the case before us, it is plain that the judgment of the circuit is not erroneous. The $1,000 paid by Armentrout to Garber under the mistaken belief that, at the death of Charles Armentrout, he (the defendant in error) would receive the interest of Mrs. Garber in her father’s estate, was paid upon a consideration which failed. ' Mrs. Garber, after the death of her husband, having repudiated her contract with the defendant in error (Albert P. Armentrout), made when she was under disabilities of coverture, and in that being sustained and justified by the circuit court of Augusta, in the decree above referred to, and having received under that decree her share of the real estate of her father, which she had by her deed (afterwards annulled and set aside by said decree as inoperative and void) conveyed to the defendant in error, it is plain that the consideration of $1,000 was paid under a mistake and has failed, and that the defendant in error is entitled to re *240 cover back the amount he paid under such mistake for r. property which he never received, and which, by a decree a court of competent jurisdiction, has been transferred t0 hJs grantor. °
. . . It would be manifestly inequitable and unjust to permit. Garber’s estate to retain both the thousand dollars paid by Armentrout, and at the same time the real estate derived from Chas. Armentrout, which was the main if not only consideration for which the $1,000 was paid. In all conscience and fair dealing, ex equo et bono, Garber’s estate ought to refund the $1,000 paid for what Armentrout never got; and Mrs. Garber, while it may be she had the right to repudiate her contract made when under the disabilities of coverture, cannot enjoy the benefits of her repudiation of her contract in the' shape of the real estate she acquired by that course, and at the same time retain the $1,000 paid by Armentrout for the very property which is decreed to her.
In the action of- assumpsit, which is essentially an equitable action, Armentrout is entitled to recover back the money paid to Garber and wife, subject to the credits allowed by the circuit court.
The court is further of opinion that the statute of limitations was no bar to the plaintiff’s action, and was properly disregarded by the circuit court. The whole question to be determined under the plea of the statute of limitations is, when did the cause of action arise ?
It certainly did not arise during the lifetime of Isaac Garber, because during his life, Armentrout, the defendant in error, had received his portion of the'personal estate of Charles Armentrout and was in possession of that portion of the real estate descended to Mrs. Garber. He doubtless then believed, as he had a right to believe, that his contract of purchase, evidenced by the deed from Garber and wife, would be faithfully carried out. A contrary purpose was never indicated until Mrs. Garber evinced her *241 purpose to rescind the contract on her part, by filing her bill in 1876, claiming that her deed was a mere nullity on account of her disabilities of coverture. He resisted pretensions in that bill, and it was not until November, 1877, that the circuit court decreed that her deed was wholly inoperative and void.
It was not until then that Armentrout was put in a position to assert his claim for the recovery of the purchase money he had paid. He promptly brought his action of assumpsit in May, 1878, within six months after the decree was rendered.
The court is therefore of opinion, that the plea of the statute of limitations was properly overruled by the circuit court.
And for the reasons stated, the court is of opinion, that there is no error in the judgment of the circuit court, and that the same be affirmed.
Judgment appiemed.