# ·CHARLESTON.

## ROBINSON *v.* WELTY.

Submitted June 7, 1894—Decided April 3, 1895.

1. ASSUMPSIT—SPECIAL COUNT—ASSIGNEE OF FRAUDULENT MORTGAGE.

   A party buys and takes a conveyance of certain real estate from a second party, who is insolvent. The real estate is subject to three mortgages and a judgment lien. The first party, for the purpose of making a proper application of the purchase money and in order to control and thereby clear off the charges and liens, having made known to a third party, one of the mortgagees, his object, takes from him a separate written assignment of one of the mortgages and the negotiable note payable to his order, not yet due, thereby secured, which was not endorsed; and the first party was ignorant of the facts, but was induced by the false and fraudulent representations of the third party, the mortgagee, who knew that the mortgage was fraudulent and voidable, to believe, and did believe, that the mortgage of two thousand dollars was a valid and subsisting charge to the extent of one thousand, two hundred and three dollars and eighty two cents, which sum he paid the mortgagee for the assignment, when in fact, and to the knowledge of the third party, the mortgage was wholly without consideration, and had been given and taken with the intent to hinder, delay and defraud the creditors of the mortgagor, and was so held in a suit to foreclose, of which the assignor had notice, and was therefore wholly worthless to the assignee. *Held*, such assignee is entitled to recover back the sum with its interest, paid for the assignment. Such recovery may be had on a special count in general *indebitatus assumpsit.* setting forth specially the facts creating the liability, and averred as the consideration of the promise.

2. ASSUMPSIT—MONEY HAD AND RECEIVED.

   It may also be recovered back on the common count in general *indebitatus assumpsit* for money had and received, accompanied with a sufficient bill of particulars.

3. ASSUMPSIT—*Bona Fide* ASSIGNEE—FRAUDULENT MORTGAGE.

   In such case it is not a good defense for the assignor to aver and prove that if the assignee, the plaintiff in the suit to foreclose, had set up, by way of confession and avoidance, the fact that he was a *bona fide* assignee for value, without notice of the fraud rendering void the mortgage as against the creditors.

of the mortgagor, it would have been held good in his hands and allowed. See *Holmes* v. *Gardner* 33 N. E. Rep. 644 (50 Ohio St. 167).

4. Assumpsit—Express Warranty.

General *indebitatus assumpsit* does not lie for the breach of an express contract of warranty.

Henry M. Russell for plaintiff in error, cited 1 Chitt. Pl. 107; Cooley on Torts, 91 to 95, 497 to 501; 15 Gratt. 572; 1 Benj. Sales, § 694; 33 N. E. Rep. 644; 14 O. St. 406; 35 W. Va. 155; 35 W. Va. 15; 33 W. Va. 553; 2 Black Judg. §§ 600, 569, 572, 573 and 574, 570; 18 S. E. Rep. 569; 16 W. Va. 245; 5 Am. & Eng. Encl. Law 344; 34 N. Y. 275, 279.

J. D. Elson and Geo. E Boyd for defendant in error, cited 21 W. Va. 709; 38 W. Va. 645; Code, c. 34, s. 5; 34 W. Va. 279; 4 Hill 119; 1 Sandf. 78; 1 Greenl. §§ 523-538; 2 Leigh. 293; Gilm. 235; 2 Rand. 313; 13 Ohio St. 136; 9 Gratt. 323; 32 W. Va. 21; 43 Vt. 98; 42 Iowa 18; 15 W. Va. 702; Kerr on Fraud (Bump's Ed.) p. 104; 9 S. E. Rep. 930; Kerr 384; 7 W. Va. 390; 17 W. Va. 717; Story Eq. § 191; 17 W. Va. 769; Kerr 385; 2 Greenl. Ev. § 120; 1 Chitty Pl. 100-107; 2 Id. 688-9; 4 Mass. 488; 37 W. Va. 797.

Holt, President :

This is an action of *assumpsit* brought by the assignee of a mortgage, to recover back from the assignor the purchase-money, the mortgage having proved to be invalid. Upon trial in the Circuit Court of Ohio county there was a verdict and judgment for plaintiff, Robinson, the assignee, and this writ of error was granted defendant, Peter Welty.

The grounds of error relied on in this Court are as follows: "*First.* Because the court below overruled the demurrer to the special count in the declaration. *Fifth.* Because the court erred in permitting the record mentioned in the special count to go in evidence. *Sixth.* Because the court refused to sustain defendant's motion to exclude plaintiff's evidence after he had rested his case. *Seventh.* It was error for the court to give the five instructons given for plaintiff. *Eighth.* The court should have granted plaintiff's motion to set aside the verdict and grant a new trial."

I here give in full the special count and instructions given. The demurrer, which involves the merits, can not be fairly considered without setting out the count in full; and besides, leaving out all the charges of fraud and falsehood it gives a fairly good, connected statement of the facts which the evidence proves, and tends to prove, as it is viewed on motion to set aside the verdict.

Declaration: "In the Circuit Court of Ohio county. *William H. Robinson* vs. *Peter Welty.* In *assumpsit.* July Rules, 1889. William H. Robinson complains of Peter Welty, who has been summoned of a plea of trespass in the case upon promises, for this. That heretofore, to wit, on the 27th day of October, 1885, he (the said plaintiff) purchased of one John J. McDermott certain real estate situated in Bellaire, Belmont county, in the state of Ohio, for which he agreed to pay the sum of two thousand seven hundred dollars. At the time of the said purchase, the said defendant held and owned two mortgages on said real estate, duly recorded in the office of the recorder of the said county of Belmont—one dated on the 28th day of January, 1879, and given to secure to Peter Welty, the said defendant, the payment of a promissory note, dated January 25, 1879, by which the said McDermott promised to pay to the defendant, two years after the date thereof, six hundred and seventy seven and thirty five hundredths dollars, with interest from the date thereof, at the rate of eight *per cent. per annum;* and the other of said mortgages was dated on the thirty first day of January, 1885, and purported to be given to secure to the said defendant the payment of a negotiable, promissory note, dated January 31, 1885, by which the said McDermott promised to pay to the order of the said defendant, twelve months after the date thereof, at the German Bank of Wheeling, two thousand dollars, for value received, with interest at the rate of six *per cent.* per annum from date. And the plaintiff avers that, while he was in treaty with the said McDermott for the purchase of the said real estate, the said defendant represented that there was then, to wit, on the 26th day of October, 1885, due and owing on the note first above mentioned the sum of seven hundred and fifteen dollars and eighteen cents, and

also falsely and fraudulently represented to the said plaintiff that there was then, to wit, October 26, 1885, due and owing to him, the said defendant, by the said McDermott, on the negotiable note dated January 31, 1885, the sum of one thousand two hundred and three dollars and eighty two cents. And the plaintiff further avers that afterwards, to wit, on the 29th day of October, 1885, at the county of Ohio, and after the purchase and conveyance of said real estate as aforesaid, the said defendant assigned and transferred to him, the said plaintiff, the said two notes. The plaintiff, relying on the said representations of the said defendant as to the amount due and owing to him on said two notes, and without notice that such amounts were in fact not due, then and there in consideration of such assignments and transfer, paid to the said defendant the sum of one thousand nine hundred and nineteen dollars, being the aggregate of the amounts which the said defendant falsely and fraudulently represented to the said plaintiff were due and owing to him on the said two notes secured by mortgages as aforesaid; but he avers the fact to be that there was not due and owing to the said defendant from the said McDermott the sum of one thousand two hundred and three dollars and eighty two cents, or any part thereof, on the note for two thousand dollars, dated January 31, 1885, and that such note and the mortgage given to secure the same were fraudulent and void and without consideration. At the time of the purchase of the said real estate from the said McDermott by the said plaintiff, there was another lien on the same, created by the said McDermott by a mortgage dated October 25, 1878, given to secure Sullivan, Barnard and Cowen the payment of certain notes therein mentioned. These notes were also assigned and transferred to the said plaintiff, he paying the holders and owners thereof the balance due thereon. Subsequent to the purchase of the said real estate by the said plaintiff as aforesaid, the same was sold to satisfy a judgment lien of ———— Dubois and ———— McCoy, partners, doing business under the firm name of Dubois & McCoy, which judgment was against the said McDermott, and was a lien on the said real estate at the time of the said purchase by

the plaintiff, but was of a later date than the three mortgages aforesaid, and of inferior dignity to them; and the said Dubois & McCoy became the purchasers of the said real estate at the last named sale, subject, however, to the lien of the said three mortgages, which had been assigned to and were still held by the said plaintiff. Under proceedings subsequently had in the court of common pleas of Belmont county in the state of Ohio by the said Dubois & McCoy to recover possession of said real estate, he, the said plaintiff, set up and relied on the three mortgages aforesaid; and while, in said proceedings, the said mortgage to Sullivan, Barnard and Cowen, dated October 25, 1878, and to the said defendant, dated January 28, 1879, were held valid liens, and the said plaintiff was permitted to recover, and by the judgment of said court did recover, the amounts found due on the notes secured by the said last named two mortgages, yet the mortgage to the said defendant, dated January, 31, 1885, was declared to be fraudulent, and by the judgment of said court in said proceedings held and adjudged to be null and void, and the plaintiff was not permitted to recover the same, or any part thereof, of all of which the said defendant then and there had notice, by reason whereof, and by means of the premises, the said sum of one thousand two hundred and three dollars and eighty two cents, which the said defendant falsely and fraudulently represented was due and owing to him as aforesaid, was wholly lost to the said plaintiff, whereby, and by reason of the premises, the said defendant became liable to pay him the said sum, of one thousand two hundred and three dollars and eighty two cents, with interest thereon from the 29th day of October, 1885. And being so liable, the said defendant, afterwards, to wit, on the 1st day of November, 1885, at the county of Ohio, undertook and faithfully promised to pay him, the said plaintiff, the said sum of one thousand two hundred and three dollars and eighty two cents, with interest thereon from October 29, 1885, when he should be thereunto afterwards requested. Nevertheless, the said defendant, not regarding his promise and undertaking, and contriving and intending to deceive and defraud the said plaintiff in this behalf, hath not as yet

paid to the said plaintiff the said sum of one thousand two hundred and three dollars and eighty two cents with the interest thereon as aforesaid, or any part thereof, but to pay the same hath hitherto wholly neglected and refused, and still doth neglect and refuse, to the damage of the said plaintiff in the sum of one thousand five hundred dollars."

Plaintiff's instructions: "No. 1. The court instructs the jury that if they believe from the evidence that Robinson paid to Welty a sum of money in consideration of the assignment of two notes of McDermott's and of the mortgages made to secure these, and that Welty falsely and fraudulently represented or induced Robinson to believe, and that he did believe, that there was owing to him one thousand nine hundred and nineteen dollars thereon, and that Robinson relying on such representation paid him that amount of money, if in fact nothing was due on one of such notes, then Robinson is entitled to recover in this action so much of the sum of one thousand nine hundred and nineteen dollars as was paid to Welty for the assignment of the note on which nothing was due and owing, unless they further believe from the evidence that Robinson knew and understood at the time he so paid the money that Welty was to pay such money to Mrs. McDermott, and paid such money with that understanding. No. 2. The court instructs the jury that if they believe from the evidence that Welty falsely and fraudulently represented to Robinson that there was due on the note of McDermott one thousand two hundred and three dollars and eighty two cents and that Robinson, relying on such representation, paid him one thousand two hundred and three dollars and eghty two cents, and if they further believe in fact there was nothing due to Welty on said note, and that Robinson has lost the amount so paid, then he is entitled to recover in this action 'the amount so paid, with interest thereon from the time of payment, unless they further believe that Robinson knew at the time he paid the money that there was nothing due on such note, and that one thousand dollars of the money so paid was to be turned over to McDermott. No. 3. The court instructs the jury that if they believe from the evi

dence that the defendant, Welty, paid over to Mrs. McDermott a part of the money received by him from the plaintiff, Robinson, for the assignment of the two notes and mortgages held by Welty, this is no defense to Robinson's claim in this action, unless they further believe from the evidence that at the time he paid the money to Welty, he knew and understood that Welty was to pay a part of the money over to Mrs. McDermott, and that he paid Welty with such an understanding. No. 4. The court instructs the jury that if they believe from the evidence that the note for two thousand dollars and the mortgage made to secure it were without any consideration, fraudulent and void, and that they were assigned by the defendant to the plaintiff for value, then the burden of proof rests on the defendant to show that the plaintiff knew that they were without consideration, fraudulent and void when they were assigned to him, and also that the plaintiff knew and understood at the time of such assignment that one thousand dollars of the money paid by the plaintiff was to be paid over by the defendant to Mrs. McDermott. No. 5. The jury are instructed that it was not necessary on the part of the plaintiff to prove the false representations alleged in the declaration by express and positive statements of the defendant, but it was sufficient to prove them by his acts and conduct; and if the jury believe from the evidence that the defendant, by his acts and conduct, induced the plaintiff to believe that the mortgage for two thousand dollars was a valid mortgage, and that there was money due and owing to him on account of the said mortgage, and the plaintiff was thereby induced to pay him the amount so claimed to be due, then the plaintiff is entitled to recover the amount so paid, unless they further believe that the plaintiff knew it was to be paid to McDermott or his wife."

It is contended that the demurrer to the declaration should have been sustained. *First,* because the form of the action has been misconceived; that the injury complained of, if any, is a tort for which the proper remedy is case, and it is not a case in which an action *ex contractu assumpsit* can be brought; *second,* the special count of the declaration alleges

that representations were made, and that they were false, but wholly omits to allege that they were knowingly false and made with intent to deceive.

Here the tort is averred in detail, as showing the liability, and the liability as the executed consideration of the promise, and the promise is set forth as an express one. The promise must be so averred, though the duty or obligation arises *dehors* all contracts expressed or implied, in fact, and as solely created by the law; for in all cases the declaration in *assumpsit* must show that a promise has been made by expressly averring that the defendant undertook or promised, or by other equivalent words (see 1 Chit. Pl. 392); and no distinction in this respect exists in common-law pleading between an implied promise and an express one (*Id.* 394; Bish. Cont. § 190; *Avery* v. *Tyringham,* 3 Mass. 160; *McGinity* v. *Laguerenne,* 10 Ill. 101; *Wingo* v. *Brown,* 12 Rich. Law 279; *Muldrow* v. *Tappan,* 6 Mo. 276; *McNulty* v. *Collins,* 7 Mo. 69); "and the presence or absence of these words is a test of distinction in declaring between *assumpsit* and case." *Trespass on the case* is generally used as the generic term, comprehending the three classes—*case, trover and conversion,* and *assumpsit.* See Hare, Cont. 132; Andrews' Steph. Pl. § 52; 26 Am. & Eng. Enc. Law 694. And, although *assumpsit* long ago became an action strictly *ex contractu,* it was in its origin an action *ex delicto,* and the express undertaking averred was the inducement, and the gist of the action was the disregard or refusal to complete or perform such undertaking by continuing and intending to deceive the plaintiff in that behalf. See Holmes Com. Law 183; Bigelow Lead Cas. "Torts," p. 20; *Chandelor* v. *Lopus,* 1 Smith Lead Cas. (9th Am. Ed.) 319, 330. The transition from an express undertaking to one to be implied as a fact from conduct would be easy, especially where helped out by the requirement of it by equity and good conscience; and, for the sake of the remedy, it would be easy to pass to the case where the obligation or duty violated had no foundation but a consideration which had moved from the plaintiff, and the requirement of the discharge of such obligation in equity and good conscience. For an interesting dis-

cussion of the general subject, see Keener Quasi Cont., c. 1, *et seq.*

In the special count, the plaintiff avers: That on the 27th day of October, 1885, he bought of one John J. McDermott certain real estate in Bellaire, in the state of Ohio, for the sum of two thousand seven hundred dollars. At the time of the purchase, defendant, Peter Welty, held two mortgages on the real estate—one dated January 28, 1879, to secure a note made by McDermott to Welty for six hundred and twenty seven dollars and thirty five cents; the other (the only one here involved) dated January 31, 1885, given to secure a negotiable note made by McDermott, payable to the order of Welty, for the sum of two thousand dollars and interest, twelve months after date, at the German Bank of Wheeling. That, while plaintiff was in treaty with McDermott for the purchase of the real estate, defendant falsely and fraudulently represented to plaintiff that there was then, to wit, on the 26th day of October, 1885, due and owing him (defendant) from McDermott on the note and mortgage of two thousand dollars, the sum of one thousand two hundred and three dollars and eighty two cents. That, after his purchase from McDermott, the plaintiff, relying on the representation of defendant of the amount due and owing on the note and mortgage, and without knowledge that such sum was not in fact due, then and there took a transfer of said note and assignment of said mortgage, and in consideration thereof paid to defendant said sum of one thousand two hundred and three dollars and eighty two cents, but in fact said sum was not due and owing, but said deed of trust was wholly without consideration, fraudulent as against creditors of McDermott, and void, and was so adjudged; of all which facts defendant had notice.

It is seen that this is what we may strictly call a special count in general *indebitatus assumpsit*, as distinguished from a count on an express contract or promise, being simply the common count in the action of debt, with a slight change in the conclusion. It rests on a liability created by law as springing out of the facts set forth in the inducement, and the question raised by the demurrer is, does such legal liability

thus arise as a point of law out of the facts alleged as justifies a recovery in general *indebitatus assumpsit?* It would be a misleading misnomer to call this a "special *assumpsit.*" That would set forth the representation made by defendant, Welty, as a contract of warranty, as collateral to the contract of assignment, alleging the breach of such express contract and the injury and the damages thereby sustained, and upon such a contract, as a subsisting one, *indebitatus assumpsit* would not lie. See *Cutter* v. *Powell,* 2 Smith Lead. Cas. (9th Am., from 9th Eng. Ed.) 1226, 2 Smith Lead. Cas. (8th Am. Ed.) pt. 1, p. 48. Therefore, if this count, by reason of its want of an averment of the *scienter*—the guilty knowledge on the part of the assignor—does not allege facts creating a liability for deceit, we can not by leaving it out make a good count on the express contract of warranty where the *scienter* would be wholly immaterial. But I do not think it can be said that it is defective in this regard, for it avers that a false representation was fraudulently made—that is, was deliberately made with intent to deceive; besides, it avers that defendant had notice of all the facts set forth; and the fact of the mortgage being fraudulent and void, without consideration, and made with intent on McDermott's and defendant's part to hinder and delay McDermott's creditors, is so alleged as to make it a matter of special knowledge which it was defendant's duty to know, such positive affirmation of such facts comprehends an averment of the *scienter.* But is the liability alleged a liability which can be enforced in *indebitatus assumpsit?* If defendant obtained the sum of one thousand two hundred and three dollars and eighty two cents from plaintiff by the false and fraudulent representation that the mortgage was a valid and subsisting claim to that extent, then, according to the cases, he is bound to refund it, for the mortgage was voidable, and has been held to be void and worthless; for the only object he had in view in buying it, and the consideration which induced plaintiff to pay the sum of one thousand two hundred and three dollars and eighty two cents has wholly failed. In such a case the law puts the defendant under obligation to refund the money. In equity and good conscience he can not

retain it, and this action as on a *quasi* contract will lie for its recovery. *Moses* v. *Macferlan*, 2 Burrows 1012. In 1 Chit. Pl. 157, it is said: "Nor is *assumpsit* the proper remedy in the case of a deceitful representation not embodied in or noticed on the face of a written contract between the parties, but the remedy should be *case* for the fraud"—citing *Meyer* v. *Everth*, 4 Camp 22; *Gardiner* v. *Gray, Id.* 144; *Laing* v. *Fidgeon, Id.* 169; Lord Ellenborough, C. J., in *Powell* v. *Edmunds*, 12 East. 11. It will be found that these cases turn on a rule of evidence which does not permit a written instrument to be varied or added to by parol, nor do they apply to *indebitatus assumpsit* in such a case as this, where the defendant has by fraud and covin obtained the plaintiff's money. See Cooley Torts 107 *et seq.*

The action for money had and received may generally be maintained where the money of one man has without consideration got into the pocket of another; or, as it is sometimes expressed, a man can not have something for nothing; "a man shall not be allowed to enrich himself unjustly at the expense of another." Keener Quasi Cont. p. 19. Since one has the right to recover the proceeds of property wrongfully converted and sold, it necessarily follows that where the plaintiff's money has been tortiously obtained by the defendant, the tort may be waived, and an action for money had and received be brought. *Id.* p. 180, where this branch of the subject of *quasi* contract is fully discussed, and many of the cases brought together. The law seems to be settled by many cases that where the plaintiff's money has been wrongfully obtained by the defendant by misrepresentation of fact or other false pretense, the tort may be waived and an action for money had and received be brought (*Catts* v. *Phalen*, 2 How. 376; *Burton* v. *Driggs*, 20 Wall. 125); for, where the defendant has obtained the plaintiff's money from him by fraud and deceit, the law implies a promise from the wrongdoer to restore it because *ex aequo et bono* the defendant ought to refund the money, and to enforce such obligation the action of *assumpsit* lies. *Garber* v. *Armentrout*, 32 Gratt. 235, 239. See 2 Rob. New Prac. 454; *Bliss* v. *Thompson*, 4 Mass. 488; *Lyon* v.

*Annable,* 4 Conn. 350, 355; 2 Greenl. Ev. (15th Ed.) § 120; Bish. Cont. §§ 225, 226.

It may be stated in this connection that this declaration also contains the common count for money had and received, and with it the plaintiff has filed an account stating distinctly the particulars and nature of his claim. By the authorities cited we have seen that this count may be supported by evidence that the defendant obtained the plaintiff's money by fraud, false color, or pretense. 2 Rob. New Prac.. 454. And in *Johnson* v. *Jennings,* 10 Gratt. 1, it is said that this is the usual and better mode of counting in such cases. And entire damages having been given, and there being one good count, that is sufficient to support the verdict. See Code, c. 131, s. 13. And it would be hard to say what injury the defendant could have sustained by overruling his demurrer to the special count, conceding it to have been deficient as full proof of all the counts.

This special count avers that defendant made to plaintiff the false and fraudulent and material representation that the mortgage given to him by McDermott was a valid and subsisting debt to the extent of one thousand two hundred and three dollars and eighty two cents, whereas, as he knew, it was wholly without consideration, nothing was due, but it was given by McDermott and taken by defendant for the purpose and with the intent to defraud McDermott's creditor's; that plaintiff, being ignorant of this fact, and relying on defendant's representation, paid his money, took the assignment, and by reason of such false representation was injured and sustained damage to the amount of one thousand two hundred and three dollars and eighty two cents and its interest. But defendant says that this special count is not good on demurrer because it shows plaintiff to have been a *bona fide* assignee of the note and mortgage for value, without notice of the fraud of defendant, and therefore according to the case of *Holmes* v. *Gardner,* 50 Ohio St. 167, (33 N. E. Rep. 644) he would have been entitled to protection against the claims of the general creditors of McDermott, the fraudulent mortgagor; and that he failed to get such protection, and lost his mortgage debt by his own fault, in

not confessing the fraud charged against McDermott, the fraudulent mortgagor, and defendant, Welty, the fraudulent mortgagee and avoiding it by replying that he (plantiff) was a *bona fide* assignee of the note and mortgage for value, without notice. But can defendant set up as defense here, plaintiff's failure to thus confess and avoid defendant's own fraud? Does it not come within the meaning of the maxim that a party alleging his own fraud is not to be heard? Still, passing this by, I think the complete answer to the above contention is that by the averments in this count, he did not know that such charge of fraud made by the defendants in plaintiff's Ohio suit to foreclose was well founded and true, until it was shown to be so by the decision of the court. Therefore, he met such charge by a direct denial, because he did not know and had no ground to believe it to be true.

It also appears, and is so averred in plaintiff's special count, that at the time of plaintiff's purchase from McDermott and before plaintiff's purchase from Welty of the notes and mortgages, Dubois & McCoy had obtained a judgment against McDermott which was a lien on said real estate at the time of plaintiff's purchase, but of later date than the three mortgages, and of dignity inferior to them. After plaintiff's purchase of the land, the land was sold on execution under the judgment lien of Dubois & McCoy, and was bought by them; so that, at the time of plaintiff's purchase of the notes and mortgages, Dubois & McCoy were not general creditors of McDermott, but were the holders of a specific lien upon the real estate in question, with rights definitely ascertained and fixed against such real estate, with the right as against Welty, to have his mortgages reduced to the true amount due thereon. And the fact then being that one of them was without consideration, and therefore void as to them, the question arises, could Welty make it valid, and displace their lien by assigning it to a purchaser for value, without notice of the fraud rendering void the title of such assignor? It seems to me that the reason of the rule as given in *Holmes* v. *Gardner* would not then exist, for Dubois & McCoy were not general creditors, but were judgment creditors with a specific lien against the land. They

have no longer trusted to the personal responsibility of their debtor, McDermott, but have fastened their debt upon his land, subject, it is true, to valid prior liens, but not subject to invalid ones. Now, if any one bought from McDermott he would pay his money upon the faith of the debtor's actual title to the specific property transferred, but subject to the judgment lien; and such purchaser for value, acting in good faith, could not get rid of the judgment lien by putting money in the debtor's pocket to take its place. Could he at that stage, for value and good faith, buy from a fraudulent mortgagee a mortgage and note which was in the mortgagee's hands fraudulent and void as against the judgment credtors, and thus make a worthless lien good against the judgment lien made specific and fixed? If Robinson could have done this, was he compelled to do so to protect Welty in retaining money he had fraudulently obtained? For if Welty had been a party to the suit to foreclose, and Robinson had set up and had allowed against the judgment lien of Dubois & McCoy his claim of being a purchaser for value of Welty's mortgage, without notice of the fraud rendering void Welty's title, the court would certainly at the same time have decreed that Welty should pay to Dubois & McCoy the one thousand two hundred and three dollars and eighty two cents, as received by him from Robinson, to stand as a substitute for that much of the value of the land. See *Bean* v. *Smith*, 2 Mason 252 (274 Fed. Cas. No. 1,174). So that such decree would have placed the parties Dubois & McCoy, Robinson and Welty exactly where the court now finds them, as the result of the suit to foreclose and of the judgment here complained of; and thus both innocent parties would have been made whole, and the wrongdoer alone made to suffer. Any other result in such a state of facts than the one at least ultimately holding the wrongdoer bound to make good the loss would be putting it in his power of his own motion when he saw fit of profiting by his own wrong. If this view of the law is correct, then Robinson was not compelled to set up as against Dubois & McCoy the fact that he was an innocent purchaser for value, but could give their judgment its proper place as against the fraudulent mortgage and look to Welty,

his assignor, as the one in justice ultimately liable; and if so, it does not lie with defendant to complain of plaintiff putting himself to the trouble, delay and expense of placing the loss where it ultimately belongs.

Was it error to admit the record? Robinson brought this suit to foreclose in the court of common pleas of the county of Belmont, of the State of Ohio, where the real property under mortgage lies; making parties defendant John J. McDermott and Mary Ann, his wife, the mortgagors, and Dubois & McCoy, judgment creditors of McDermott, who had execution on their judgment levied on the real estate as the property of McDermott, had the same sold, and became the purchasers thereof. A transcript of this record, duly certified, was offered in evidence by plaintiff, to which defendant objected; but the court permitted it/to go in evidence for the purpose of showing the fact that such judgment was rendered, but reserving the question of its effect as an estoppel, and the defendant excepted. The suit for the sale of the real property under the mortgage was brought in Belmont county, where the lands lie, as required by the law of Ohio (2 Rev. St. Ohio, § 5022); and there the defendants in the suit resided. The defendants Dubois & McCoy, among other things answered that there was not due on the two thousand dollars mortgage the sum of one thousand two hundred and three dollars and fifty five cents or any other sum, but that said mortgage was totally without consideration, and was given by McDermott and received by Welty as a void mortgage, and for no valuable consideration; and this was proved by the deposition of Welty, taken and read in the case, with nothing to contradict it or show it to be otherwise; hence the court, by decree of 26th April, 1888, held the two thousand dollar mortgage to have been given without consideration, and to be entirely void as against Dubois & McCoy. The record certainly proves that such a decree was rendered, and defendant, Welty, in his evidence in this suit, says that the mortgage was without consideration and void. The record proves itself, and that Robinson lost his mortgage, for which he had paid one thousand two hundred and three dollars and fifty five cents, as the sum remaining due there-

on; and defendant, Welty, in this case, says that under the pleadings and evidence in the suit to foreclose, the judgment is right, but that plaintiff ought not to have recourse on him, because plaintiff did not set up in that suit the fact that he was a purchaser for value wihout notice of the fraud of defendant, his assignor, rendering void his title.

In such a state of facts, and with the view of the law already given, I can not see that it makes any difference in this case that the defendant was not a party in that, or that he had no proper notice to appear, make himself a party, and defend and resist the claim of Dubois & McCoy, for his own showing, if he had been a party, and had set up the fact that Robinson was a purchaser for value without notice, the court would, in any event, have given a decree against him, as the one ultimately liable, for the one thousand two hundred and three dollars and fifty five cents; for, if such plea availed, then he had Dubois & McCoy's money as standing in the place of the property fraudulently withdrawn; if not, then he had the money obtained by fraud from Robinson. If this view be correct, it is not necessary to discuss the question whether he received sufficient notice to defend the claim set up in the forecloseure suit against the validity of the mortgage assigned by him, or, if sufficient, whether it was his duty in some way to cause such defense to be made. The record was at least competent evidence, though the judgment may not be conclusive. See *Sibley* v. *Hulbert,* 15 Gray 509.

There is still another view that may be taken. The negotiable note and mortgage were transferred and assigned by defendant, Welty, to plaintiff, Robinson, by a separate written instrument; and although Robinson took them as a purchaser for value, without notice of the fraud rendering void, as against the creditors of McDermott, the title of Welty, his assignor, Robinson, did not take the note by endorsement, and McDermott was apparently insolvent, and had become a non-resident of both states. The evidence also shows that plaintiff, Robinson, before the assignment, had bought the property of McDermott, and had taken a conveyance; that Dubois & McCoy then had a judgment lien; and that Robinson was applying the purchase money in taking

up the liens prior to the judgment for his own protection; and that he bought defendant's two thousand dollar mortgage, not because it was good against McDermott, who had no other property, but because it appeared upon its face to be a valid and subsisting lien, and was so represented to the extent of one thousand two hundred and three dollars and fifty five cents. Did not such representation, which could be made by acts and conduct as well as by words, form the sole basis of the sale, and did not the assignment under such circumstances plainly presuppose and guaranty it to be a valid and subsisting lien to that amount? Having turned out to be a nullity for the purpose for which he bought it, there having been a total failure of consideration, why may he not recover back the purchase money? No part of the two thousand dollars had ever been paid. Why count up any sum as the balance due on it if it were not for the purpose of assuring the plaintiff of the truth that it was a valid lien, and one still subsisting to the extent of such balance? Why should not the jury be allowed to take such representation, such acts and conduct, as put forward by Welty 'in order to induce Robinson to make the purchase, and believe that Robinson knowing nothing to the contrary and relying upon them made the purchase? It was a question of fact for the jury. See *Croyle* v. *Moses,* 90 Pa. St. 250; *March* v. *Wilson,* Busb. 143; Bigelow Frauds, 467. Robinson had bought the property, and wished to know the valid and subsisting liens against it, so that he could lift them by assignment to himself with the purchase money. The balance due on his mortgage was a fact peculiarily within the knowledge of Mr. Welty. Could not the jury say that he was bound to make good his representation in that regard—in other words under the common count, treat his representation as a warranty that it was *pro tanto* a valid and subsisting mortgage? In this view it might be regarded as an action brought for a rescission, or rather as based upon a repudiation of the contract of assignment, on the ground of a misrepresentation of the material fact of the validity of the two thousand dollar mortgage, and a total failure of the consideration. In that view of the case, where rescission is claimed and a res-

toration of the money paid, it would be only necessary to prove that there was such misrepresentation, and an adjudication that the mortgage was fraudulent and void. Then, however honestly it may'have been made, however free from blame the person who made it, the contract, having been made by misrepresentation, can not stand. See *Derry* v. *Peek*, L. R. 14 App. Cas. 337-359; also, *Brownlie* v. *Campbell*, L. R. 5 App. Cas. 935. In such case the averment or proof of *scienter* is not necessary. See Bigelow, Frauds 520. That for which Robinson paid his money proved to be, not a valid and subsisting lien on the property to the extent of a balance of one thousand two hundred and three dollars and eighty two cents as against the other lienors, but a mere nullity as against the judgment of Dubois & McCoy. In such case the contract of assignment could be and was treated by Robinson as voidable and as rescinded, and he was entitled to recover back his money on the count for money had and received, because it was entered into on the faith of a material representation, which was false in fact (see Benj. Sales, § 429; Bish. Cont. § 71); for he did not get what he contracted for, *viz.:* a note and mortgage, with one thousand two hundred and three dollars and eighty two cents due on it, and valid and binding as against every one as it appeared on its face, but one wholly without consideration and void for the purpose for which he bought it (see Bish. Cont. § 71).

If one sells a promissory note, the law implies the warranty that it is not forged, but genuine and binding on the parties, and not subject to any legal defense; yet in the absence of fraud, there is no warranty of the maker's solvency or ability to pay. Bish.'Cont. § 245. This count alleges that after the mortgage had been, in the Ohio suit, adjudged to be null and void, and the one thousand two hundred and three dollars and eighty two cents had become to plaintiff wholly lost, the defendant, treating the assignment as rescinded or repudiated, with full notice of all the facts, undertook and promised to pay. A misrepresentation without the *scienter* ceases to be innocent when the party who made it undertakes, after learning of its falsity, to maintain the advantage gained by means of it. 1 Bigelow, Frauds 520. See *Street* v. *Blay*, 2

Barn. & Adol. 456, cited in *Cutter* v. *Powell,* 1 Smith Lead. Cas. (9th Ed.) 1226. But see 1 Tuck. Comm. Laws Va. 338. I take the true distinction to be that where the plaintiff has the right to repudiate the contract of assignment of the mortgage upon the ground that it is a nullity, and he has nothing but the warranty that it is valid, he would not be required to bring special *assumpsit* for the breach of the express contract, but may recover at law in *indebitatus assumpsit* as for total failure of consideration; but no opinion is or need be expressed on this point.

When the plaintiff had closed his evidence in chief, defendant moved to exclude it from the jury. If this was meant as a denial of its sufficiency, and that the court should in that way instruct the jury to return a verdict for the defendant, the exception taken to the overruling of the motion was waived by defendant going on with his own evidence. See *Core* v. *Railroad Co.,* 38 W. Va. 456 (18 S. E. Rep. 596). If it was meant to object to the evidence as irrelevant or otherwise inadmissible, none such was pointed out except the record of the judgment of foreclosure, and that was only admitted for the purpose of showing the fact that such a judgment had been rendered; and, as we have already seen, it was, when taken in connection with defendant's own testimony in this suit, relevant and proper. Defendant claimed that plaintiff knew, when he took the assignment of the two thousand dollar mortgage and note, that it had been given and taken with the intent to delay, hinder and defraud the creditors of McDermott, the mortgagor, and that nothing in fact was due, and that he also knew that of the one thousand two hundred and three dollars and eighty two cents, one thousand dollars was to be and was turned over to Mrs. McDermott. This was the turning point in the case, and upon it the evidence *pro* and *con* was conflicting; hence the extent to which it figures in the hypothetical state of facts upon which the five instructions given are based. It is enough to say that there was evidence tending to prove the hypothesis of facts upon which these instructions are founded; and we are of opinion that taken as a whole, they state the law of the case supposed, with substantial correctness; and, view-

ing the case from the standpoint of the evidence not contro-verted, of the special finding of the jury, and the tendency of the evidence on other points, we can see no error, if any at all, which could be to the prejudice of the defendant.

Finally, did the court err in refusing to set aside the verdict as contrary to the evidence? On the general issue of *non assumpsit* there have been two trials and two verdicts. On the first trial the jury were required to answer in writing the following question: "At or before the time when the notes and mortgages were assigned by defendant, Welty, to plaintiff, Robinson, did Welty, either personally or through Schafer, in Welty's presence and with his assent, make any false and fraudulent misrepresentations with reference to the two thousand dollar note or mortgage?" The jury on the first trial answered this important question with emphasis in the negative, returning their answer in writing with their verdict for the defendant. This important finding is not to be found in this record, for reasons given in the case of *Welty* v. *Campbell*, 37 W. Va. 797 (17 S. E. Rep. 312).

This verdict was set aside, and a new trial awarded. And on the second trial the jury found for the plaintiff, and, in answer to the same special questions, returned in writing the following answer, "Yes, we think these papers were misrepresented at the time of the assignment."

It is certainly not intended in this case to say anything harsh in regard to Mr. Welty. The answer of the first jury, which might be more reliable, is not before us. We must look only to the answer of the second jury on this vital point. We must, on this hearing of this writ of error, consider all the evidence before us. Code (Ed. 1891) c. 131, s. 9. But the general rule is that the verdict ought not on that ground be disturbed, unless the court can plainly see that the verdict is without evidence on some essential point, or that there is a clear and decided preponderance of evidence against the finding of the jury.

On this vital point, as we have already seen, the evidence is conflicting, as well as the verdicts; but the last is the only one before us, and, under the rule as announced, we are of opinion it must stand as a finding on the issue and of the damages by them assessed. Judgment affirmed.