# CHARLESTON.

SNYDER v. WHEELING ELECTRICAL CO.

Submitted June 3, 1897—Decided November 10, 1897.

1. PLEADING—*Negligence—Evidence.*
   A declaration for tort arising from negligence may allege the mere negligence generally, without stating the particular facts going to prove negligence, but must specify with reason-

43  661
45  638

43  661
e 51  99
52  168

43  661
e54  399
54  400

43  661
56  556

43  661
59  424

43  661
e62  537
62  691

43  661
64  84

able certainty the main or primary act of omission or commission doing the damage; and the allegation that the defendant did the particular act causing the damage furnishes the predicate or basis for evidence of all such incidental facts and circumstances of omission and commission as fairly tend to establish the negligence of the primary act, and to plead them specically would be to plead mere evidence instead of facts. (p. 662 )

2. Pleading—*Negligence—Evidence—Variance.*

Where a declaration based on negligence states a particular act as the cause of the damage, no evidence of other acts causing it can be given. (p. 665.)

3. Negligence—*Evidence.*

There must be reasonable evidence of negligence. But where a thing is shown to be under the management of the defendant or his servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care. (p. 667.)

Error to Circuit Court, Ohio County.

Action by Florence Snyder against the Wheeling Electrical Company. Judgment for plaintiff. Defendant brings error.

*Reversed.*

W. P. Hubbard, for plaintiff in error.

John A. Howard and Melville D. Post, for defendant in error.

Brannon, Judge:

In an action on the case, Florence Snyder, administratrix of Andrew C. Snyder, recovered a judgment against the Wheeling Electrical Company for one thousand dollars, and the company obtained this writ of error.

One error alleged is the action of the circuit court in overruling a demurrer to the declaration. The specification of its defect is that it ought to, but does not, set forth the duty and aver the neglect; and citation is made of the language in the opinion in *Clarke* v. *Railroad Co.*, 39 W. Va. 732 (20 S. E. 696), that a declaration in "tort must have requisite definiteness to inform the defendant of the nature of the cause of action, and the particular act or omission constituting the tort," and reference is made to

*Poling* v. *Railroad Co.*, 38 W. Va. 645 (18 S. E. 782),
holding that a declaration for negligence "is good if it
contain the substantial elements of a cause of action, the
duty violated, the breach thereof properly averred, with
such matters as are necessary to render the cause of action
intelligible, so that judgment according to law and the
very right of the case can be given." I think these state-
ments are good law. Hogg, Pl. & Forms, § 140, says that
it is settled as a general rule that it is not necessary to
state the particular acts which constitute negligence. This
is so, but we must take care not to misapply this state-
ment. The West Virginia cases cited to sustain the rule
are cases against railroads for killing stock. If a declara-
tion allege that a railroad killed stock by negligently run-
ning a train over it, as in those cases, that would be suf-
ficient, without more details of the circumstances of run-
ning over it; but I take it that it would not be enough
simply to say that the company negligently killed a horse.
You must aver the duty, and aver the existence or pres-
ence of negligence in its performance, and specify the act
working damage, but need not detail all the evidential
facts of negligence. You must tell the defendant, even
under this general rule, that he negligently did a specific
act doing harm. In other words, you may say that the
defendant negligently did or did not do so and so, without
detail as to the mere negligence, but you must state the
acts that are the basis of liability. If the negligence can
not be otherwise charged, detail must be given. As said
in *Berns* v. *Coal Co.*, 27 W. Va. 285, the object of a decla-
ration is to give the facts constituting the cause of action,
so they may be understood by the party who is to answer
them, and by the jury and court, who are to give verdict
and judgment on them; and though, in an action for neg-
ligence, it is not necessary to state with particularity the
acts of omission or commission, yet, lest too loose a prac-
tice shall grow under this rule, it may be well to state the
warning given in *Railroad Co.* v. *Whittington*, 30 Grat.
810, that "this rule does not justify a general and indefi-
nite mode of declaring, admitting of almost any proof."
In that case it was held not enough to state that the rail-
road company was working its road with cars and con-
ducted itself so negligently in its business that it inflicted

severe bodily injuries, by reason of which the person died, without stating where the deceased was, or how injured. To avoid misunderstanding, it is important to add that the declaration need not state the particular facts that are not primary or main facts, but only are evidence of primary facts. When the necessary primary facts are given, then all other facts merely incidental that go to prove the primary facts may be proven without specification in the declaration. *Davis* v. *Guarnieri*, 45 Ohio St. 470 (15 S. E. 350); *Ware* v. *Gay*, 11 Pick. 106; *McCauley* v. *Davidson*, 10 Minn. 418 (Gil. 385) 422.

The declaration in this case states that the defendant operated an electric plant for the manufacture and sale of electricity, and had its wires over the streets of the city of Wheeling for the conveyance of electricity in dangerous currents, and that it was the duty of the defendant to exercise all possible care in putting up and operating its plant and wires, and constantly inspecting the wires and other appurtenances and appliances, and in seeing that they were strong, suitable, and safe, and that the wires and appurtenances were at all times safely secured, and to immediately attend to and repair broken or defective wires and appliances, and, when any of the wires were down upon the street, to cut off from them the current of electricity, that the lives and limbs of persons on the streets might not be endangered; yet the defendant carelessly and negligently suffered one of its wires at the corner of Market and Sixteenth streets to be so insufficiently secured that it came down, and lay on the street, and Snyder stepped upon it, received the electric current, fell prostrated by it, and continued to lie there, and receive the current into his body, and therefrom died. This declaration surely says that it was the duty of the defendant to safely secure the wires, and that, from being insufficiently secured, they came down into the street, and there wrought the injury. This one duty, breach, and injury save the declaration from demurrer. I think, too, the declaration may, by implication, be construed to say, what it should have positively averred, that the defendant failed to cut off the current from the wire when down, as it avers that the current entered Snyder's body, and he fell, and continued to receive it, which could not be so had the current been cut

off. "A declaration will be treated as alleging by implication every fact which can be implied from its averments by the most liberal intendment." Hogg, Pl. & Forms, § 140. Those were the only two omission of duty specified. None other could be proven, for, even where there may be allowable a general charge of negligence, yet, if the declaration does give certain specifications of negligence as sources of the injury, others cannot be proven. *Hawker* v. *Railroad Co.*, 15 W. Va. 629. Therefore evidence was not admissible to prove want of or bad insulation of wires at the place of accident and elsewhere, and that wires came in contact with wet posts, and that nobody was kept on duty to repair broken wires; that on a certain other occasion, when a wire was out of fix, some one telephoned from the plant that there was no one to fix the wires; that no instruments were kept to discover breaks; and that at other places the wires were bare. It might seem that some of this evidence might come in under the allegation of insecure fastening, but it relates more to the condition of the wires, not to their fastening, and there is no allegation of defective wires.

The declaration does assign certain duties as imposed on the company, among them the duty to attend to broken wires, and to inspect wires and apparatus, and to see that all wires were strong, suitable, and safe; and, if this recital of duties had been followed up with averment that the insulation of the wires was defective, and in places the wires bare, coming in contact with wet poles, thus injuring and rendering them unsafe and liable to break, or even the general allegation that the wires were unsuitable, weak, and unsafe, in negation of the duty assigned in the recital, and that servants were not kept for inspection, and that careful repair was not made, and that no appliances were kept to announce at the plant a fall of wires, and no means existed for discovery of their fall, this evidence would have been admissible. But what, in this declaration, gave the defendant warning of all this evidence? I think evidence of failure to inspect was admissible as evidence of insecurity of fastening and on principles above stated. It may be said that the evidence that no instrument was kept to tell of a fallen wire ought to come in under the allegation that it was the duty to cut off the current, and

that the current continued to flow after the fall of the wire; but that would be going very far. None of this evidence could get in under this declaration but by a liberality too loose,—one ignoring the defendant's rights,— some of it not at all. I here allow the evidence that with certain means of ascertaining an accident the current could be shut off at once, under the charge that it was the duty to shut it off, and the allegation made by implication that it continued after the fall of the wire; and that is going pretty far. All this evidence, as a court can readily see, was calculated to and did wield a potent effect in the case, and the error of its admission cannot be looked over as harmless. It was an important factor in the trial.

From these considerations it comes that plaintiff's instruction No. 2 was bad as presenting a theory for recovery which, though made relevant by some evidence, yet there was no warrant for under the declaration. It said that if the defendant failed to have the most reliable and best appliances to discover broken wires, the company, in the absence of contributory negligence, was liable. I think No. 3 good under the charge of insecure fastening. I think No. 2 should have said "good, reliable and efficient" means and appliances, instead of "best and most reliable." *Berns* v. *Coal Co.*, 27 W. Va. 286, points 9, 10. An instruction for defendants (No. 4) told the jury that the only negligence charged in the declaration was in suffering wires to be so insufficiently secured as to fall, and therefore all evidence and argument as to other suggestions of negligence must be disregarded; yet plaintiff's instructions held the company liable for not only that, but for failure to have the best appliances for discovery of broken wires, and for failure to exercise the highest degree of care in the construction, inspection, and repair of wires and poles; and so the instructions were inconsistent,—one saying to the jury that the case involved only one basis of recovery, others giving several. Which would the jury follow? Likely those giving several. A good instruction does not cure a bad one, but it must be withdrawn. *McKelvey* v. *Railway Co.*, 35 W. Va. 500 (14 S. E. 261). Inconsistency in instructions is error. *Industrial Co.* v. *Schultz*, 43 W. Va. 470 (27 S. E. 255).

I think, as Dr. Walden had examined the dead body

of Snyder in his effort to resuscitate life, he could give his opinion as to the cause of his death. His opinion, however, should be confined to his knowledge based on that examination; but the court allowed him to state his opinion, not only on that, but also from what he could learn,—that is, hearsay. I think it is admissible to ask him whether there was any indication of death from any other cause than electricity, so as to negative any other death-producing cause.

I come next to an important question. Suppose there is no evidence of negligence on the part of the defendant, does the mere fact that the wire fell create a *prima facie* presumption of negligence, sufficient, in the absence of something appearing in the case to repel that presumption, to support the action? This involves the rule or principle of *res ipsa loquitur,*—the thing itself speaks. A wire charged with a deadly current of electricity falls from its proper place of elevation above the street to the surface of the street, and there, by contact with a man lawfully passing along the highway, kills him with its current. Are we to presume that its fall came from some negligence of the owner, unless the circumstances of the case or facts shown by him shall show that its fall is not attributable to his negligence, but from some defect which that reasonable care and prudence proper in the case of such deadly wire was unable to discover, or some accident beyond his control; in other words, from inevitable accident? I answer that the law raises a *prima facie* case of negligence. As stated in that great work, 16 Am. & Eng. Enc. Law, p. 448: "As a rule, negligence is not presumed. But there are cases where the maxim, '*Res ipsa loquitur,*' is directly applicable, and from the thing done or omitted negligence or care is presumed." The rule cannot be better stated, in its generality, than as given in *Scott* v. *Dock Co.*, (1865) 3 Hurl. & C. 596: "There must be reasonable evidence of negligence. But where the thing is shown to be under the management of the defendant or his servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care." In those words it is approved in 1895 in *Shafer*

*v. Lacock*, 168 Pa. St. 497, (32 Atl. 44), a case where two workmen were repairing a roof, having a fire pot, and from it a fire resulted, destroying the house. "When the physical facts of an accident themselves create a reasonable probability that it resulted from negligence, the physical facts themselves are evidential, and furnish what the law terms evidence of negligence in conformity with the maxim, '*Res ipsa loquitur*,' " is the apt language in which the principle is stated in *Seybott* v. *Railroad Co.*, 95 N. Y. 562. One man is hurt from the works or property of another, when, from the nature of the case, he would not likely have been hurt without negligence of that other. May he not ask of that other an explanation, or, on his failure to give it, then damages for his injury? Take the case where one, in passing along a street, is hurt by a barrel falling from a door above, or by a brick falling from a wall or scaffold, or by a falling shutter or wall, or the like. The mere occurrences in themselves import negligence. Especially take the cases where things of great danger are used in public highways, where multitudes constantly and lawfully pass, their very nature requiring the highest degree and constancy of care, and one is killed from its being out of place or defective, why may we not logically and fairly assume negligence, unless other plausible explanation appears? The latest work on Torts (2 Jagg. Torts, p. 864) says: "A live wire, however, is exceedingly dangerous, so that proof of contact therewith, and consequent damages, makes it a complete case of *prima facie* negligence, and throws the burden on the defendant to show that such wire was in the street without fault on his part. Generally, companies using electricity on lines along a street are charged with the highest degree of care, having due reference to existing knowledge in the construction, inspection, and repair of their wires and poles, and in the use of devices to guard against harm." This doctrine needs no further discussion from me. It is well sustained by American and English authority. 16. Am. & Eng. Enc. Law, 449, and notes; 2 Jagg. Torts, 938; Whart. Neg. § 421; Cooley, Torts, 799; Bigelow Torts, 596; Shear & R. Neg. § 60; full note 6 Am. St. Rep. 530,—a building falling into street; *Mulcairns* v. *City of Janesville*, 67 Wis. 24, (29 N. W. 904),—wall of a cistern falling; *Dixon* v.

*Pluns*, 98 Cal. 384, (33 Pac. 268),—chisel falling from a scaffold; *Houston* v. *Brush*, 66 Vt. 331, (29 Atl. 380)—injury from being struck by a wheel from a tackle block, attached to a derrick; note in *Railroad Co.* v. *Anderson*, (Md.) 20 Am. St. Rep. p. 493 (s. c. 20 Atl. 2); *Thomas* v. *Telegraph Co.*, 100 Mass. 156,—telegraph wire swinging over a street too low, so as to obstruct travel; *Clare* v. *Bank*, 1 Sweeney, 539,—injury from plank falling from one's premises; *Howser* v. *Railroad Co.* (Md.) 30 Atl. 906,—cross-tie falling from a moving car; *Ugla* v. *Railway Co.* (Mass.) 35 N. E. 1126; *Morris* v. *Strobel & Wilken Co.*, 81 Hun. 1 (30 N. Y. Supp. 571),—sign board falling in street. It is clear that this doctrine applies in cases where a passenger on a railroad, or other conveyance of a common crrrier, is injured, there existing in such cases a presumption of negligence against the carrier, because there is an implied contract to safely convey; but it is not confined to such cases. 20 Am. St. Rep. 493; *Rose* v. *Transportation Co.*, 11 Fed. 438. There it is said that, though the presumption is more frequently applied in such cases, yet there is no foundation in authority or reason for such limitation, as the presumption originates from the nature of the act, not from the relation of the parties, and is indulged whenever, as a legitimate inference, the occurrence is such as, in the ordinary course of things, does not take place when the proper care is exercised. This doctrine has been applied to those using electricity in streets. *W. U. Tel. Co.* v. *State* (Md.) 33 Atl. 763; *Haynes* v. *Gas Co.*, (N. C.) 19 S. E. 344. Public policy, from sheer necessity, must require of a person or corporation using the current of electricity in high tension along highways a very high, if not the highest, degree of care, and this high degree would seem all the more reasonable to justify this rule of presumptive negligence in such cases. The degree of care in the nature of the case being high, and there being little danger if such care be exercised, if accident happen, there is afforded a probability of the absence of that care. This high degree of care is exacted of operators of electricity by the cases just cited, and by *Electric Co.* v. *Simpson*, 21 Col. 371 (41 Pac. 499); *Giraudi* v. *Improvement Co.*, 107 Cal. 120 (40 Pac. 108); *Ennis* v. *Gray*, 87 Hun. 355 (34 N.

Y. Supp. 379). Crossw. Electricity, § 249, says that the mere fact that an electric wire sags or falls, if unexplained, is sufficient proof *prima facie* of negligence. But juries must understand that this presumption is by no means final or conclusive. Uniformly careful, prudent management commensurate with the dangerous character of the works and adequate to the safety of the public, in the absence of specific neglect connected with the accident, will repel such presumption. We must not forget that misfortunes do occur from inevitable accident. A wire may have some defect which the most astute care will not discern. A wire originally good may come to be defective, and break, when no human skill could detect its defect. Time and wear deteriorate man and all the means and instruments he uses to gain a living. Paralysis and failure may come upon them at any moment. Whether there is culpable blame is a question for a fair-minded jury under all the circumstances.

It follows from what I have said that the court properly refused to exclude the plaintiff's evidence as it tended in an appreciable degree to sustain the case, so as to make it proper to go to a jury. So I may say as to the defense of contributory negligence. *Carrico* v. *Railway Co.*, 35 W. Va. 389, point 3, (14 S. E. 12) ; *Yeager* v. *City of Bluefield*, 40 W. Va. 484, (21 S. E. 752). And the defense waived the motion to exclude by going on with its evidence. *Robinson* v. *Welty*, 40 W. Va. 385, (22 S. E. 73). *Core* v. *Railroad Co.*, 38 W. Va. 456, (18 S. E. 596). And it follows from the views above given that the court did not err in refusing to give defendant's instruction No. 2, that the mere fact that Snyder was injured raised no presumption of negligence against the defendant. In an instruction given in lieu of it the jury was told that the mere fact of injury raised no presumption of negligence, unless the proof establishing the injury showed circumstances from which some negligence or want of care may be attributed to the defendant. This was error against plaintiff, because it negatived the rule that the fall of the wire and injury afforded a *prima facie* case of negligence and the instruction was beneficial to the defendant.

Defendant asked instruction 9, saying that, if the wire where the accident occurred was defective, and the injury

resulted from that defect, that raised no presumption of negligence, and the plaintiff could not recover unless he proved by a preponderance of evidence, in addition to these facts, that the defect occurred through the negligent act or default of the defendant. This instruction is bad. Granting a defect in the wire killing the deceased, a *prima facie* case for recovery is made. Defendant asked and was refused instruction No. 10: "Where an event takes place, the real cause of which cannot be traced, or is at least not apparent, it ordinarily belongs to that class of occurrences designated as purely accidental, and, there being no presumption of negligence in such cases, the party who asserts negligence cannot recover without showing enough to exclude the case from that class of accidental occurrences." In *Railway Co.* v. *Locke*, 112 Ind. 412, (14 N. E. 391), cited to support the instruction, it is admitted, I think, that in cases where a presumption of negligence arises, the principle of this instruction does not apply. The instruction is bad as applied to this case, in view of the rule above stated of a presumption of negligence from this occurrence. Defendant was refused instruction No. 11: "Where the circumstances of an accident indicate that it may have been unavoidable . notwithstanding reasonable and proper care, the plaintiff charging negligence cannot recover without showing that the defendant has violated a duty incumbent upon it from which the injury followed in natural sequence." I think this instruction proper, in view of the defendant's evidence as to good management, and evidence by witnesses on both sides that electric wires sometimes break from causes impossible to discover. Of course, though the *prima facie* presumption of negligence from the broken wire exists, yet it is subject to be met by any and all circumstances, features, and evidence in the case tending to give the misfortune a cause not springing from the company's ·fault, but purely from an accident, which no reasonable human care could prevent, a hidden defect in the wire, electrolysis rendering it suddenly weak, or whatever cause. This instruction presented the question to the·jury on the whole breadth and aspect of the case, whether the misfortune came from unavoidable accident; and it seems to me that, when the circumstances do indicate unavoidable accident as the

cause, it ought to be shown or appear that it was not. Why was not the defendant entitled to this instruction? I think instruction No. 12 asked by the defendant was improperly refused. *Railway Co.* v. *Locke*, 112 Ind. 404, (14 N. E. 391). "(12) The defendant in erecting and maintaining its wires, was only bound to anticipate such combinations of circumstances and accidents and injuries therefrom as it may reasonably forecast as likely to happen, taking into account its own past experience and the experience and practice of others in similar situations, together with what is inherently probable in the condition of the wires as they relate to the conduct of its business." As the case is to be retried, I shall not discuss the merits on the evidence as to the liability or non-liability of the defendant, either with or without reference to contributory negligence, as the evidence may not be the same on a second trial, and, if not, this Court ought not to express an opinion on part of the evidence. We will therefore reverse the judgment, grant a new trial, and remand.

*Reversed.*