## BOYD *v.* PORTLAND ELECTRIC CO.

[7 Am. Electl. Cas. 661; 66 Pac. 576.]

LIVE ELECTRIC WIRES—INFERENCE OF NEGLIGENCE.*

1. In actions against electric companies for injuries received from contact with live wires in public ways proof of the breaking of the wires and of the happening of the accident makes a *prima facie* case of negligence: *Esberg Cigar Co.* v. *Portland,* 34 Or. 282, applied.

INJURY BY LIVE WIRE—RES IPSA LOQUITUR.

2. Where plaintiff has made a *prima facie* case of negligence by showing that an accident happened resulting in his injury, he is not obliged to prove any specific negligence, though it may have been alleged, since the presumption is that the accident would not have happened had proper care been taken.

NEGLIGENCE—QUESTION FOR JURY.

3. In an action against an electric company for injuries received from contact with a live wire, where plaintiff has made a *prima facie* case, and defendant has introduced evidence that the accident occurred without fault on its part, the question of negligence is for the jury.

NEGLIGENCE—INSTRUCTIONS.

4. In an action against an electric company for damages caused by a broken live wire hanging in the street, where plaintiff alleged that defendant could have known and did know of the break in time to remedy the defect, but negligently omitted to do so, it was not error to submit to the jury the question whether the company was negligent in failing to discover the break.

---

*NOTE.—An extensive collection of recent electricity decisions on the proposition that certain conditions constitute *prima facie* evidence of negligence so as to require proof by the defendant in rebuttal may be found in 7 Am. Electl. Cas. 431-759, with notes by Mr. E. Q. Keasbey at pp. 446 and 757. See, also, notes in 31 L. R. A. at p. 576; 20 Am. St. Rep. at p. 490; 30 Am. St. Rep. at p. 736; 56 Am. St. Rep. at p. 67; 15 L. R. A. 33; 31 L. R. A. at p. 576; 39 L. R. A. 843 (briefs of counsel).

As to liability for negligent delay in removing or repairing broken or fallen wires, see 31 L. R. A. at p. 579.—REPORTER.

ELECTRICITY—CARE REQUIRED—ACT OF GOD.

5.   Where the poles and wires of an electric company are properly erected and maintained, and a storm of extraordinary severity, such as could not have been reasonably expected, causes a wire to fall, and it is not permitted to remain an unreasonable time in such condition, the company will not be liable for resulting damage; but if the storm is one that should have been anticipated, the company will be liable.

REMARKS OF COURT—HARMLESS ERROR.

6.   In passing on the various matters necessarily incident to a trial a judge must make remarks in the presence of the jury that are not intended for their guidance, but the instructions are ordinarily sufficient to correct any impressions thus created.

REFUSING DUPLICATE INSTRUCTIONS.

7.   Requested instructions that are fairly covered by the general charge are properly refused.

From Multnomah :   ARTHUR L. FRAZER, Judge.

Action by R. B. Boyd against the Portland General Electric Company to recover for the loss of the services of his son, who was injured by one of defendant's wires.   It is a case growing out of the same accident referred to in *Boyd* v. *Portland Elec. Co.* 37 Or. 567 and 41 Or. —.   Plaintiff had judgment and defendant appeals.                                    AFFIRMED.

For appellant there was a brief over the name of *Dolph, Mallory, Simon & Gearin,* with an oral argument by *Mr. Rufus Mallory.*

For respondent there was a brief over the name of *Dufur & Menefee,* with an oral argument by *Mr. E. B. Dufur.*

.Mr. CHIEF JUSTICE BEAN delivered the opinion of the court.

This is an action by R. B. Boyd against the Portland General Electric Company to recover damages alleged to have been suffered by him on account of an injury to his minor son from coming in contact with a live electric light wire.   The defendant is a corporation engaged in supplying the City of Portland and its inhabitants with electric light, for which purpose it has put up poles along the streets, having cross-arms near the top, upon which its wires are stretched.   The day before the accident, and while a storm was prevailing, two of the

wires on Magnolia Street became crossed at a point some one hundred and twenty-five feet west of Dakota Street, and about 6 or 7 o'clock in the evening the smaller one burned in two and hung down in two loops east of the break; one of them nearly reaching the ground two or three feet west of the pole at the intersection of the streets, where it swung directly over a path used by residents of the neighborhood. The other end remained suspended from the next pole, some one hundred and fifty feet west, and did not reach the ground. About the time, or soon after, the wire parted, the boy who was subsequently injured, a lad about eleven years of age, and an elder brother, passed the pole west of Dakota Street, noticed the broken wire at that place, and knew it was dangerous, but did not know anything about the other wire hanging down east of that point at the intersection of the streets. About 8 o'clock the next morning, the plaintiff, who resides on Dakota Street, some two hundred feet south of its junction with Magnolia, sent his son on an errand which required him to travel along the path near the light pole at the corner of the street, over which the wire was suspended. A few minutes later the boy was discovered lying on the ground, immediately under the broken wire, in an insensible condition, his right hand badly burned, while he was otherwise seriously and perhaps permanently, injured. No one witnessed the accident, and the lad was unable to give any account of how it occurred, but says he passed out of the front gate, and ran north along Dakota Street without looking up, after which he had no recollection of what occurred. It is admitted, however, that his injury was caused by contact with the broken wire. The negligence charged in the complaint is that the wire which parted and caused the injury was weak and defective, and not sufficiently attached or fastened to the pole, or properly stretched, or safely insulated, owing to which defects and weakness it broke and parted; that defendant could have known by proper diligence, and did know, at the time, or very soon after, the wire parted, and long before the injury occurred, that the wire was broken and swinging over and across the street, to the imminent danger of persons traveling thereon;

that, disregarding its duty, it failed and neglected to remove or repair the broken wire, or to give any warning of danger, but wrongfully and negligently permitted it to remain in such condition until after the injuries complained of were received.

The answer denies the negligence charged, and, for an affirmative defense, after alleging the contributory negligence of the plaintiff's son, avers that the wire which parted was one of the best known standard manufacture, and was placed upon the poles in a proper way; that a heavy storm prevailed during the afternoon of the sixth of December, the wind at one time reaching a velocity of sixty miles an hour, which the defendant believes forced the wire across a larger one on the cross-arm to the north of it, so that the friction of the wires caused the insulation to wear away, permitting them to come in contact; that between 6 and 7 o'clock in the evening the smaller one burned through and parted, and fell in loops across the other, as stated in the complaint; that, although defendant had the best known appliances in use at the time for detecting or discovering the grounding of its wires, it had no knowledge of such parting until notified of the accident to plaintiff's son, when, upon examination, it ascertained that neither end of the broken wire had come in contact with the ground, so as to form a short circuit, and therefore the fact of the wire having parted could not be indicated by its appliances.    The reply put in issue the new matter alleged in the answer; and, the trial resulting in a verdict and judgment in favor of the plaintiff, the defendant appeals.

1.    The plaintiff gave evidence tending to show when the wire which caused the injury to his son fell and the circumstances surrounding the accident, but gave no direct evidence of the specific acts of negligence charged in the complaint. The court, however, instructed the jury, among other things, that "in cases of this kind the law raises a presumption of negligence from the mere fact that the wire broke and the accident happened, because of the high degree of care which is required on the part of the person or corporation conducting

40 Or.—9.

such business, and for reasons which I need not discuss here. What I mean by that is that if any evidence had been brought here that this wire was broken, and through the breaking of the wire this boy had been injured, and then nothing further had been introduced in the case,—no further evidence,—and the case was left there, it would be your duty to find for the plaintiff, provided you found, also, that he was not guilty of negligence on his part. That is what is called a *prima facie* case. Now, this may be rebutted by evidence on the part of the defendant, notwithstanding this presumption. If the defendant comes in and satisfies you that it did use ordinary care in building and maintaining and repairing this line, and that the accident occurred without fault on its part, then it would be your duty to find on that point for the defendant.'' The giving of this instruction is assigned as error. The general rule of law is unquestioned that, excepting in cases where the defendant is an insurer, a party who charges another with negligence must prove it. But there are instances in which proof of an accident and the manner of its occurrence is sufficient to make a *prima facie* case, and to cast the burden on the defendant to show that it occurred without fault on his part. As a general rule, where the thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of events would not happen if he had used proper care, it affords reasonable evidence, in the absence of a satisfactory explanation, that the accident arose from a want of care: *Esberg Cigar Co.* v. *City of Portland,* 34 Or. 282 (55 Pac. 961, 43 L. R. A. 435, 75 Am. St. Rep. 651, with note). This doctrine is held applicable in actions for injuries received from contact with a live electric wire in a public street. Electricity is a dangerous element, and those who make merchandise of it are legally bound to exercise that degree of care that will render its use reasonably safe; and, as the wires which convey it cannot safely be permitted within reach of travelers, a presumption arises, when they are found out of their proper place, that those having them in charge have been negligent. The courts

quite universally hold that proof that a live wire was down in a street and injury resulted therefrom is *prima facie* evidence of negligence: 2 Jaggard, Torts, 864; Joyce, Elec. Law, § 606; Keasbey, Elec. Wires (2 ed.), § 271; *Western Union Tel. Co.* v. *State, to use,* 82 Md. 293 (6 Am. Electl. Cas. 210, 31 L. R. A. 572, 51 Am. St. Rep. 464, 33 Atl. 763); *Haynes* v. *Raleigh Gas Co.* 114 N. C. 203 (5 Am. Electl. Cas. 264, 41 Am. St. Rep. 786, 26 L. R. A. 810, 19 S. E. 344); *Denver Consol. Elec. Co.* v. *Simpson,* 21 Colo. 371 (5 Am. Electl. Cas. 278, 31 L. R. A. 566, 41 Pac. 499); *Trenton Pass. Ry. Co.* v. *Cooper,* 60 N. J. Law, 219 (7 Am. Electl. Cas. 444, 38 L. R. A. 637, 64 Am. St. Rep. 592, 37 Atl. 730); *Snyder* v. *Wheeling Elec. Co.* 43 W. Va. 661 (7 Am. Electl. Cas. 473, 28 S. E. 733, 39 L. R. A. 499, 64 Am. St. Rep. 922, with note).

2. The defendant contends, however, that as the complaint in hand avers that the wire which caused the injury was weak and defective, and insufficiently stretched and fastened, the plaintiff was obliged to point out by his testimony some defects in the particulars alleged. But we are unable to concur in this view. The doctrine of *"res ipsa loquitur"* alluded to is a mere rule of evidence: 2 Thompson, Neg. 1227, *et seq.* It proceeds on the theory, as the term implies, that the happening of an accident under certain circumstances is of itself *prima facie* evidence of negligence, and, when it is evidence of the particular negligence charged in the complaint, the plaintiff is entitled to invoke the rule. Thus, in *Trenton Pass. Ry. Co.* v. *Cooper,* 60 N. J. Law, 219 (38 L. R. A. 637, 64 Am. St. Rep. 592, with note, 37 Atl. 730, 7 Am. Electl. Cas. 444, with note), the negligence averred was the insufficient bonding or fastening of the rails of a street railway, and it was insisted that the plaintiffs were obliged to point out and establish some particular defect or insufficiency as alleged. The court held, however, that the escaping of electricity from the rails was presumptive proof of the negligence alleged, thus bringing the case within the doctrine of *res ipsa loquitur.* In *Snyder* v. *Wheeling Elec. Co.* 43 W. Va. 661 (7 Am. Electl. Cas. 473, 39 L. R. A. 499, 64 Am. St. Rep. 922, with note, 28 S. E. 733), the

negligence charged was insufficient fastening, and, although the court held that no evidence of other acts of negligence was competent, it ruled that the mere fact that the wire fell created a *prima facie* presumption of negligence, sufficient to support the action unless rebutted by something appearing in the case. In *Denver Consol. Co.* v. *Simpson,* 21 Colo. 371 (5 Am. Electl. Cas. 278, 31 L. R. A. 566, 41 Pac. 499), the negligence charged was defendant's failure to properly construct its line, and its omission to take the necessary precautions to prevent the wires from falling. It was held that the fact that the wire had become detached from its fastenings and hung down in a public alley, so as to endanger public travel, was *prima facie* evidence of negligence on the part of the defendant, and an instruction to that effect was properly given. In the case at bar, it probably would have been sufficient, if the plaintiff had specified in the complaint generally the act or omission which he alleges to have been the proximate cause of the injury, and averred that it was negligently done or omitted. But, since the wire which caused the injury would not, presumably, have parted and fallen down, in the ordinary course of events, unless it was either defective or improperly stretched or fastened, it is reasonable to presume that its position in the street was owing to one or all of these causes. It must be assumed that a suitable wire, properly put up, would not be a menace to travelers on the highway; otherwise, the operation of a light plant by wires supported by poles in the streets of a city would be *ipso facto* a nuisance, and an unauthorized interference with the rights of the public. If, therefore, the wires break and fall down, that fact in itself affords reasonable evidence of negligence, either in the use of defective wires or in the manner of putting them up, and calls upon the defendant to show that it was without fault. It is, of course, true that in an action of this character the plaintiff cannot allege negligence in one particular, and upon the trial prove and recover upon another: *Lieuallen* v. *Mosgrove,* 33 Or. 282, 286 (54 Pac. 200, 664); *Jones* v. *City of Portland,* 35 Or. 512 (58 Pac. 657). But we do not understand that the instruction complained of conflicts

with this rule.   It was confined to the inference or presumption to be drawn from the breaking of the wire and the happening of the accident, the proof of which was *prima facie* evidence that the wire was either weak and defective or improperly put up.   The instruction, therefore, did not advise the jury that the plaintiff was entitled to recover on a ground of negligence not charged.   The cases already cited illustrate the application of the doctrine of *"res ipsa loquitur"* where specific acts of negligence are charged in the complaint.

3.   It is argued, however, that, if proof of the accident was sufficient under the pleadings to make out a *prima facie* case in favor of the plaintiff, it was overcome by the testimony of the defendant.   But the weight, value, and credibility of such testimony were for the jury, and the court could not properly have taken the case from them on the ground that the defendant had shown by its employees that the accident occurred without fault on its part.   In a recent case in New York, where a trolley wire fell, injuring a traveler, it was held that the presumption of negligence on the part of the company, arising from the fall of the wire and the happening of the accident, was not overcome by the evidence of interested persons that the supports were the best obtainable, that the line was frequently inspected, and an automatic device called the "breaker system" was in use, which, if properly adjusted, would automatically cut off the current if the wire touched the ground; the credibility of the witnesses and the sufficiency of the device being questions for the jury:   *O'Flaherty* v. *Nassau Elec. R. Co.* 34 App. Div. 74 (54 N. Y. Supp. 96, 7 Am. Electl. Cas. 535).   In *Uggla* v. *West End St. Ry. Co.* 160 Mass. 351 (35 N. E. 1126, 39 Am. St. Rep. 481, 4 Am. Electl. Cas. 389), the plaintiff was struck by part of an iron ear used to clasp a trolley wire and keep it in place around the curve over the defendant's track.   There was no evidence of the defendant's negligence, except that the iron ear broke with the strain and one part of it fell, striking the plaintiff on the head.   The verdict in his favor, however, was sustained, notwithstanding the defendant had introduced evidence tending to show that the

break was a clean one, bright in color and appearance; that the iron was sound all through, with no flaw or defect in it; that the whole apparatus was manufactured and put up by a manufacturer of the highest reputation; that the ear and guy constituted the best and strongest device known at the time for keeping trolley wires in place; that the defendant employed a competent corps of assistants, including foreman and superintendent, who inspected the whole line weekly, including the cars and every attachment; and that this particular part of the line had been inspected within a week prior to the accident.

4.    It is next insisted that the court erred in instructing the jury that, "if the defendant had known of the breaking of the wire, it would have been its duty, under the high degree of care required of it under the circumstances, to have repaired it at the earliest possible moment, or at least as early as it could practically be done; but, if it did not know of the break,—and the evidence here, I believe, is undisputed that it did not,—the question for you to determine is whether, under the circumstances, it reasonably should have known, or should have provided means by which it would have known, of the breaking within that time, and within such a time that it could reasonably have repaired the break before the accident occurred. It is for you to determine whether or not it was guilty of a want of that high degree of care required of it in not providing means to find out whether this line had broken within this time. If you should find that company was negligent in this respect, then it would be responsible for the negligence, although it might not have been guilty of negligence in any other respect." The specific objection to this instruction is that there are no allegations in the complaint charging the defendant with negligence in failing to adopt necessary or proper means to ascertain whether the wire was broken; but, on the contrary, it is argued the complaint alleges that defendant did know of the break very soon after it occurred, and did not exercise due care and diligence in replacing and taking care of it. The language of the complaint is that defendant, its officers, agents, and employees, by proper diligence could have

known, and did know, very soon after the wire was broken, and long before the injuries complained of, that it was broken and hanging over the street, etc., and carelessly failed and neglected to remove or repair it, or to give any warning of danger, and wrongfully and negligently permitted the broken wire to remain in such dangerous condition until after the accident. It is not clear whether the pleader intended to charge negligence in not ascertaining that the wire had broken, or with negligence in not taking care of a broken wire; but the construction which seems to have been put upon the pleadings by the defendant in its answer, and by the court and parties throughout the trial, is that it charged negligence in not exercising reasonable care and diligence in ascertaining that the wire was broken, and we are of the opinion that the court did not err in submitting that phase of the question to the jury. Again, it is objected that this instruction assumes there was no evidence that the defendant had provided means, or used reasonable care and caution in providing means, for acquiring speedy information of a break in the wires. We do not consider this a reasonable interpretation of the language used by the court. It manifestly intended to, and did, submit to the jury, as a question of fact, whether the means which defendant had of ascertaining when a wire parted were such as proper care and diligence would suggest.

5. It is next asserted that the court erred in instructing the jury that "the defendant would not be liable for an act beyond its control and which could not reasonably be foreseen. It would not be liable for an accident caused by some unusual act of nature, or what is called an 'act of God,' if this could not have been reasonably foreseen and expected. As, for instance, suppose a stroke of lightning had occurred there, and broken one of these wires and thrown it down, and through that, and before the defendant had reasonable time in which to repair the break, the accident had occurred; that would have been something that could not reasonably have been foreseen, and for which the defendant could not be held liable. So, too, if this breaking, you should find, was caused by such an unusual

storm, unprecedented storm, or any act of God that could not be expected, such unusual storm as could not reasonably have been foreseen, something that had not been known to happen before in that way, then the defendant could not be held liable. But an ordinary storm, such as we have every winter, or nearly every winter, and which on that account ought to be expected to occur in any winter, would not excuse the defendant; that is, the mere fact that the injury was occasioned by the storm. The breaking of the wire, however, might occur during the storm, or at any other time, and not be the fault of the defendant. I simply, in giving you that instruction, refer to the storm alone.'' It is argued that this instruction is erroneous because it tells the jury, in effect, that if a storm caused the wire to part, and it was such a storm as happens in this country every winter, or nearly every winter, it would not be a defense, although it may have been in fact an extraordinary or unusual storm. The rule is that if the poles and wires of an electric company are properly erected and maintained and a storm of unusual and extraordinary severity, such as could not reasonably have been expected, causes a wire to fall, and it is not negligently permitted to remain an unreasonable time in such condition, the company will not be liable for an injury caused thereby; in other words, where the proximate cause of the injury is an external force, for which the company is not responsible, the question of liability will depend on whether the force was one that might reasonably have been anticipated. And this, it seems to us, is the rule laid down in the instruction complained of. It is true, certain statements made by the court in attempting to explain and elucidate the matter to the jury would, if taken from their context, seem to support the contention of counsel; but, when construed in its entirety, the instruction amounts to a statement that defendant would not be liable for the breaking of a wire caused by a storm of unusual and extraordinary severity, which could not reasonably have been anticipated, and this is the law upon the subject: Joyce, Elec. Law, § 450; Keasbey, Elec. Wires (2 ed.), § 236;

*Mitchell* v. *Charleston L. & Power Co.* 45 S. C. 146 (22 S. E. 767, 31 L. R. A. 577, 6 Am. Electl. Cas. 245).

6.   After the case had been argued, counsel for the defendant requested the court to submit to the jury two special findings, the nature and character of which are not shown by the record.   The request was denied, but during its consideration a colloquy between the court and counsel for the defendant ensued, a part of which is contained in the record, in the course of which the court stated, in effect, that the plaintiff's son was only required to exercise ordinary care, and was not obliged to keep his eyes on the full width of the street, and look at every point for an electric light wire, but had a right to assume that the street was free from such an obstruction, and to have his head down while traveling therein, unless he had reason to believe the wire was there.   It is urged that this was error, because it indicated the opinion of the court upon the defense of contributory negligence pleaded in the answer. The question of contributory negligence was, of course, for the jury, and it was submitted to them under proper instruction. The statements of the court in reference to the propriety of submitting the special findings, although made in the presence of the jury, were not intended for their guidance, or as an announcement of the rule of law by which the question of contributory negligence should be determined, but were the reasons given for the court's denial of counsel's request, and, in view of the subsequent instructions, did not, in our opinion, prejudice the defendant's case with the jury.

7.   Objection is also made to the refusal of the court to give certain instructions requested by the defendant on the subject of contributory negligence;   but that phase of the question was fully covered by the general charge, and there was no error in such refusal.

Having thus disposed of the questions presented on this appeal, and finding no error in the record, the judgment is affirmed.                                                    AFFIRMED.