(52 South. 853.)

No. 18,087.

WILL v. SALMEN BRICK & LUMBER CO., Limited.

(June 6, 1910. Rehearing Denied June 25, 1910.)

*(Syllabus by the Court.)*

MASTER AND SERVANT (§ 278*)—INJURIES TO SERVANT—DEFECTIVE MACHINERY.

Plaintiff sues defendants for damages for personal injuries received by the bursting or breaking of an endless belt operating a blow fan in the mill of the defendant company, on the ground that it was an old belt, worn and rotten and improperly spliced, and that the accident was caused entirely by the fault of the defendants, or those for whose acts it was responsible. The issues were tried before a jury, which returned a verdict in favor of the plaintiff. Defendant appeals from the judgment rendered in conformity to the verdict. On appeal the judgment is reversed.

The belt was not old, worn, and rotten, nor improperly spliced. It was a comparatively new belt, of good material, and had been inspected the day before the accident. Having become somewhat stretched, it was taken up, spliced by an expert beltman in the employ of a belt company, sent by it to do the work of shortening and tightening the belt, who had for years before done such work skillfully and successfully.

The court was of opinion that the defendant company had done everything incumbent on it as the employer of the plaintiff; that the accident was unavoidable, and arose from latent defects of some kind, for which it was not responsible.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954–972; Dec. Dig. § 278.*]

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Action by Jacob Will against the Salmen Brick & Lumber Company, Limited. Judgment for plaintiff, and defendant appeals. Reversed, and suit dismissed.

P. M. Milner and Gustave Lemle, for appellant. Armand Romain, for appellee.

NICHOLLS, J. The plaintiff sues for the use and benefit of his minor son, Nicholas Will. He alleged: That on February 22, 1909, at about 7:30 o'clock a. m., the said minor, Nicholas Will, was in the employ of the defendant herein as an assistant or aid at the planer operated and owned by the defendant herein at their sawmill on Carrollton avenue in the city of New Orleans. That his said son was in the actual performance of the work for which he had been employed at the time of his accident, and was being paid at the rate of $1.15 per day. That, while his said minor son was performing his work around and near the planer hereinabove referred to, a certain leather belt used and operated in the sawmill, and situated near the place where petitioner's son was standing in order to perform his work, suddenly broke or split in such a way that one of the ends of the said heavy leather belt struck said Nicholas Will with violence upon the left arm, between the elbow and the shoulder, thereby crushing the bone of said arm, and subjecting petitioner's son to intense mental and physical sufferings, and to serious permanent disability.

That said belt was old, worn, and rotten, and improperly spliced, and that said accident was caused entirely by the fault of the defendant herein, or of those for whom said defendant is responsible, and that petitioner's son in no way contributed to said injury. That in consequence of said injury to his son's left arm said minor was subjected to three distinct, serious, expensive, and painful operations to said arm, in order to save said arm. That in consequence of said operations he had suffered and is suffering intense physical agony. That his arm is now permanently weakened. That said arm, by the removal of several pieces of bone, has

been shortened by about three inches, thereby permanently disfiguring said minor, and that said minor has been subjected to considerable expense for the treatment of said arm, and that his earning capacity has been permanently reduced.

Petitioner claimed for the intense mental and physical suffering suffered by his son the sum of $2,000; for the permanent injury to said arm, including disfigurement, inconvenience, etc., the sum of $5,000; for the loss of his earning capacity the sum of $5,000; and for expense incident to the treatment of said arm, the exact amount of which is yet unknown to petitioner, as said arm is still under treatment, he claimed the further sum of $500—making a total of $12,500 herein claimed.

He prayed for citation upon the defendant herein, and, after all due delays and legal proceedings, for judgment in his favor, for the use and benefit of his minor son, Nicholas Will, and against the defendant herein, in the full sum of $12,500, with legal interest from the date thereof, and for all costs of suit, and legal, general, and equitable relief. He further prayed for trial by jury.

Defendant answered, pleading first a general denial. Further answering, it denied that the belt by which plaintiff was injured was old, or rotten, or improperly spliced, but averred, on the contrary, that the belt had not been long in use, was good and sound in every particular, and the ends of same had been properly put together by a mechanic skilled in his business.

That the accident in this case was purely unavoidable, and was due to no negligence of respondent, and that plaintiff's son necessarily assumed all of the ordinary risks of the hazardous occupation of work in a sawmill. Respondent prayed that this suit be dismissed, at his costs. The case was tried before a jury, which returned a verdict in favor of the plaintiff against defendant for $3,000.

Defendant applied for a new trial, on the ground that it was contrary to the law and the evidence; that

(1) The plaintiff failed to make out his case; the allegation of the petition being that the belt was old and worn, and improperly spliced, and no evidence being offered to show that the belt was either old or worn or improperly spliced.

(2) The plaintiff assumed that, because the belt parted at the splicing, the splicing had been improperly done.

This assumption or prima facie case was met by the defendant establishing the following facts:

(1) That regular inspections were made of the belts in the mill.

(2) That the belt in question was a new belt, in use only 15 months; whereas the life of a belt is 6 or 10 years.

(3) That the belt had stretched, as all new belts will, and needed taking up.

(4) That an expert of one of the best known belt houses was employed to do the work, a man who has had 16 years of experience, and who had never put a belt together that had not stuck.

(5) That the belt was in first-class condition. That he did the work in a first-class, workmanlike manner, in the customary way, splicing the belt at the mill, as is done by all sawmill houses, and used the best waterproof cement on the market.

(6) That the foreman of the mill was present during this work, and testified that he knew of no reason why this belt parted where it was spliced, and that it was an unavoidable accident.

(7) That the boy was not employed in any dangerous occupation, and only a short time each day was in the passageway in the yard near this belt, which was 8 or 10 feet above

his head, passing from the second floor up to the fan or blower. That he had worked there 15 months, and knew and appreciated the danger of being hurt if the belt broke, and never made any complaint.

This motion was overruled, and defendant has appealed.

Plaintiff has answered the appeal, praying that the judgment be amended up to the amount claimed in the petition.

The evidence shows that plaintiff's son was very severely injured while employed as a laborer at the mill belonging to the defendant company, without any fault or negligence on his part. The injury was caused by the bursting or breaking of an endless eight-inch leather belt, by which a blow fan on the second floor of the mill was operated. The belt was made of sections glued together at every four feet. It was made an endless belt by bringing its two ends together and gluing them with what is known as "belt cement."

It was not old, worn, and rotten, as alleged in the petition, but was a comparatively new belt. It was shown that the usual duration of such a belt was 10 or 20 years; that it and all the other belts in the establishment were inspected every Sunday morning, while the mill was not running. A regular inspection of belts was made on the day before the accident occurred. It was noticed that this particular belt had stretched and needed to be taken up—shortened and made tighter. The Manhattan Rubber Company was accordingly called on to send one of its expert beltmen to do the work. It sent its beltman, a Mr. Thompson, to do the work. He was the workman who had been usually sent to the defendant to do work of that character. He inspected the belt, shortened it to the extent he deemed necessary, glued the ends together with cement, placed the ends so glued under pressure, and left it to dry out, some time on Sunday morning. The mill was not started up until the next day, when this particular fan was then put again into use. About 8 or 9 o'clock on Monday the belt came apart with force and struck plaintiff's son, who was working on the ground, in the arm, breaking and fracturing the bones between the elbow and the shoulder. What cause brought about this bursting of the belt was not shown. The breaking of the belt was undoubtedly the proximate cause of the injury. Counsel for plaintiff in his brief says: That the mere happening of an accident does not prove negligence on the part of anybody, but that the nature of the accident and the presumption it raises may suffice. That where a thing is shown to be under the management of the defendant, or his servant, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care. That in the case of Snyder v. Wheeling Electric Co., 43 W. Va. 661, 28 S. E. 733, 39 L. R. A. 499, 64 Am. St. Rep. 922, it was held that the breaking of a live electric wire and its fall to the ground presumes negligence. He cites in this position 39 L. R. A. 499, 502; Abbott's Trial Evidence, 719–720; Abbott's Trial Brief (2d Ed.) p. 215; 1 Labatt's Master & Servant, pp. 330–337; 1 Bailey on Personal Injuries, p. 73, and authorities; Puget Sound Iron Co. v. Lawrence, 3 Wash. T. 226, 14 Pac. 869; Williams v. Lumber Co., 114 La. 806, 38 South. 567; Budge v. Railroad Co., 108 La. 350, 32 South. 535, 58 L. R. A. 333; Johnson v. Christie and Lowe, 117 La. 911, 42 South. 421. Counsel insists that defendant company should not only have made an inspection of the belt on Sunday, but should before using the belt on Monday morning, have made an inspection of the same, and tested its condition.

That it was the duty of the company to have warned the boy of the probable danger of the belt's bursting after having been spliced as it was, and it did not do so.

He says that it is admitted that if the belt was cut too short, or, in other words, made too tight, it would break at the weakest point, and that it is significant that the belt broke exactly at the point where it had been spliced and weakened the day before.

He suggests, also, that having been made too tight, the engine was made to run too fast under the circumstances; also that the belt should have been taken down to be repaired, and not spliced while it was still in place in the mill.

The defendant urges: That, as shown by the evidence, he has done everything in the premises which it was his duty to do. That the work of inspecting and repairing the belt was done by an employé of the Manhattan Rubber Company. That he was an expert in the business, and had done work faithfully and well, and that the accident in question was unavoidable, and arose from latent defects of some kind, for which it is not responsible.

We are of the opinion that the defendant performed all the obligations incumbent on him as an employer of the plaintiff's son; that it was not, and is not, chargeable with any fault or negligence in connection with the breaking or bursting of the belt, which caused the injury received by him; that the accident referred to in plaintiff's petition was unavoidable, and due to some unknown cause, for which defendant cannot be held responsible. The verdict of the jury and the judgment thereon rendered are erroneous and cannot be sustained.

It is therefore ordered, adjudged, and decreed that they are hereby set aside, annulled, avoided, and reversed, and plaintiff's demand is hereby rejected, and his suit dismissed, with costs in both courts.