## HOULE v. HELENA GAS & ELECTRIC CO.

Circuit Court of Appeals, Ninth Circuit.
March 25, 1929.

No. 5619.

Lester H. Loble and Hugh R. Adair, both of Helena, Mont., for appellant.

Gunn, Rasch, Hall & Gunn, of Helena, Mont., for appellee.

Before RUDKIN and DIETRICH, Circuit Judges, and BEAN, District Judge.

RUDKIN, Circuit Judge. This is an appeal from a judgment in favor of the defendant on a directed verdict in an action for personal injuries. On January 11, 1928, and prior thereto, the appellee was engaged in the business of supplying and distributing electric current for light, heat, power, and commercial purposes in the city of Helena, state of Montana, and in adjacent territory, and maintained a line of poles and wires along the easterly side of Ewing street in that city, carrying and conducting electric current of a high and dangerous voltage. The poles on the street in question were 27 feet high and carried five wires. At about 11:20 on the evening of that day the appellant came in contact with one of these wires, which had broken and fallen to the sidewalk, and received the injuries for which a recovery was here sought. The fifteenth paragraph of the complaint alleged: "That at said time and place, the said defendant in violation of the duty it owed to the public generally and to this plaintiff in particular, negligently, carelessly and recklessly allowed and permitted its said wire, broken and disengaged as aforesaid, and while so heavily charged with such high and dangerous electric current in voltage of approximately 2,000 volts, to be and remain upon said public sidewalk on the easterly side of said Ewing Street, to the great danger of all passers-by." The eighteenth paragraph of the complaint alleged, among other things, that: "It became and was the duty of said defendant to so manage, maintain, operate and use said wire carrying such high and dangerous voltage as aforesaid so as not to injure the said Elroy Carl Houle, plaintiff herein, all of which things and duties the said defendant failed and omitted to do and perform." The answer of the appellee admitted that the wire in question, carrying and conducting electric current of high and

dangerous voltage, was broken, thus causing the wire on either side of such break to fall to the ground on the easterly side of Ewing street; admitted that the appellant, while lawfully proceeding along the sidewalk, came in contact with the broken wire and sustained some injury to his left hand, arm, and hip; admitted that it was the duty of the appellee in maintaining and using the wires to exercise reasonable care and caution, consistent with the practical operation of its business, to provide against injury therefrom by persons using the street and sidewalk; and alleged affirmatively that the injuries received by the appellant were the result of an unusual, excessive, extraordinary, and unprecedented wind and storm, which no care, caution, or human foresight could have prevented, and which wind and storm was of such extraordinary severity that-it caused electric light wires to break, and, before the appellee knew of the breaking of the wire or had reasonable opportunity to learn of the same, the injuries to the appellant occurred.

■ At an early stage of the trial the question arose whether the complaint charged negligence in general terms, or whether it only charged the specific negligence set forth in the fifteenth paragraph. The court below took the latter view on an objection to testimony interposed by the appellee, and the ruling of the court was apparently acquiesced in by the appellant, as no exception to the ruling was taken or reserved. But notwithstanding this ruling in its favor, the appellee, by way of defense, offered testimony tending to show that its plant at Helena was of standard construction, and that it was otherwise free from negligence. The appellant then offered testimony tending to rebut the testimony thus offered by the appellee. The question is now presented whether the court below took the correct view of the complaint, and we are of opinion that it should have accepted the construction which the parties themselves placed on a pleading which is at best of doubtful import. If the only negligence charged in the complaint arose after the wire broke and fell to the street, the affirmative defense contained in the answer was wholly out of place, and the same may be said of the testimony offered by the appellee tending to show that it was free from negligence generally, and that the breaking of the wire was caused by an unprecedented storm. This practical construction of the complaint, accepted by the parties throughout the trial, will be accepted by this court, and we will review the case on the assumption that the complaint contained a general allegation of negligence on the part of the appellee.

■ The question then arises, does the doctrine of res ipsa loquitur apply to such a case; and under the great weight of authority, we are of opinion that it does.

"The doctrine of res ipsa loquitur finds frequent application in electrical cases where the circumstances of the accident are often such as to create a presumption or inference of negligence sufficient to carry the burden resting primarily upon the plaintiff and often said to cast on defendant the burden of meeting or overcoming it by evidence, but accurately speaking, it does not operate to shift the burden of proof. The facts that the defendant conducts electricity to a certain place; that electricity so employed may escape in such a way as to produce an injury; and that an injury from electricity is actually occasioned in a place where the injured party has a right to be are usually held to constitute a prima facie case of negligence. The fact that wires carrying a dangerous current of electricity have broken or become detached from their poles in the street or highway and caused injury is generally held to raise a presumption of negligence, although there is authority to the effect that the doctrine does not apply in such case." 20 C. J. 380.

The general rule is well stated in Boyd v. Portland Electric Co., 40 Or. 126, 66 P. 576, 57 L. R. A. 619: "As a general rule, where the thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of events would not happen if he had used proper care, it affords reasonable evidence, in the absence of a satisfactory explanation, that the accident arose from a want of care. * * * This doctrine is held applicable in actions for injuries received from contact with a live electric wire in a public street. Electricity is a dangerous element, and those who make merchandise of it are legally bound to exercise that degree of care that will render its use reasonably safe; and, as the wires which convey it cannot safely be permitted within reach of travelers, a presumption arises, when they are found out of their proper place, that those having them in charge have been negligent. The courts quite universally hold that proof that a live wire was down in a street and injury resulted therefrom is prima facie evidence of negligence."

See, also, San Juan Light Co. v. Requena, 224 U. S. 89, 32 S. Ct. 399, 56 L. Ed. 680.

■ The remaining question is: Did the appellee overcome the prima facie case made by

the appellant by proving as a matter of law that the accident occurred without fault on its part? The appellant offered testimony tending to show that a number of persons were assembled in a private dwelling in close proximity to the place of the accident on the night in question, and that for a period of about 40 minutes prior to the accident, they observed flashes of light coming from the wires in front of the house, but whether from the wires in place or down, they did not know. Another witness testified that he observed flashes from the same wires about the same time, at a point on Ewing street some half dozen blocks from the place of the accident, and notified the person in charge of the trouble station of the appellee to that effect, who informed him that he would tell the lineman. Another witness testified that after the accident she followed the broken wire for a distance of several blocks, and that it was down the entire distance. Another witness testified that for a period of about two years prior to the accident she had observed flashes of light coming from these wires from time to time, and had so notified the appellee. Another witness, who had been in the employ of the appellee, testified that he had repaired the insulation on one of the wires where these flashes were observed, but the repairs were made some few feet from where the wire broke, and the testimony fails to show the particular wire on which the repairs were made. The testimony on the part of the appellee tended to show that the first report of trouble on this line came in at 10:26 that night. This was probably the report above referred to, as it was made about that time, although the record from which the witness was testifying did not disclose the name of the person making the report or the substance of the report. A second report came in at 10:50, but the record again failed to disclose the name of the person making the report or the nature of the report itself. As a result of the latter report, the current was turned off the arc wire on this line, but for what reason is not disclosed by the testimony. Nor does the testimony show that there was any particular reason therefor. The next reports came in after the accident, and with these we need not concern ourselves. In addition to the foregoing, the appellee offered testimony by officers and employees tending to show that its equipment was standard, and that it had been inspected from time to time, although no inspection appears to have beeen made of this particular line for more than a year prior to the accident. It further offered testimony tending to show that there was a severe storm

that night, the wind reaching a velocity of from 65 to 75 miles per hour. Beyond this there is little in the record tending to show the cause of the accident or to overcome the prima facie case made by the appellant. It will be observed from the foregoing that the particular cause of the accident was not shown or explained, and we are of opinion that the question whether the wind and storm was the sole and only cause was for the jury, and not for the court. The testimony would no doubt warrant a finding to that effect by the jury, but the fact was not so clearly and satisfactorily established as to make the question one of law.

The judgment is therefore reversed, and the cause remanded for a new trial.